[Cite as *State v. Jones*, 2013-Ohio-150.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BUTLER COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| | | CASE NO. CA2012-03-049 |
| Plaintiff-Appellee, | : | |
| | | O P I N I O N |
| | : | 1/22/2013 |
| - vs - | | |
| | : | |
| EDWARD DAILEY JONES, II, | : | |
| | | |
| Defendant-Appellant. | : | |

CRIMINAL APPEAL FROM BUTLER COUNTY COURT OF COMMON PLEAS
Case No. CR2011-09-1412

Michael T. Gmoser, Butler County Prosecuting Attorney, Donald R. Caster, Government Services Center, 315 High Street, 11th Floor, Hamilton, Ohio 45011, for plaintiff-appellee

Scott N. Blauvelt, 246 High Street, Hamilton, Ohio 45011, for defendant-appellant

**BRESSLER, J.**

{¶ 1} Defendant-appellant, Edward Dailey Jones, II, appeals his conviction and sentence in the Butler County Court of Common Pleas for rape and unlawful sexual conduct with a minor.

{¶ 2} Appellant was indicted in October 2011 on one count of rape and one count of unlawful sexual conduct with a minor. The state alleged that between the evening hours of August 2, 2011, and the early morning hours of August 3, 2011, appellant (then age 30)

forced S.P., a 13-year-old girl, to perform fellatio on him as initiation into a group of which he was the leader.

{¶ 3} Appellant waived his right to a jury trial; a bench trial was held on January 18-19, 2011. Several witnesses testified on behalf of the state. Appellant did not testify or present evidence on his behalf. Testimony at trial revealed the following facts.

{¶ 4} In the summer of 2011, A.P., S.P.'s sister, was friends with appellant. She was also friends with Kaya Burbank (then age 19). A.P., who turned 17 in late July 2011, was a member of appellant's group. That summer, sometime before August 2, A.P. introduced Kaya to appellant. The three met in a secluded spot near Kaya's house. Appellant told Kaya he was the leader of a secret group involved with "witches and warlord things," members of the group had secret powers, his wife and A.P. were members of the group, and as the leader of the group, he could initiate people into the group and help them understand their power. Appellant told Kaya that to become a member of the group, a person had to have oral, vaginal, or anal sex with a leader of the group. Appellant also told Kaya he would have to consult his wife about initiating Kaya into the group. During the conversation, appellant asked Kaya several times whether she wanted to be initiated into the group. Each time, she declined the invitation. Eventually, Kaya ended the conversation and went home.

{¶ 5} On August 2, 2011, A.P. and S.P. spent the evening together. That evening, appellant called A.P. and told her he wanted to meet S.P. later that night to talk about the group. Around 11 p.m., A.P. and S.P. went for a walk. They went to a parking lot across from the Hamilton campus of Miami University where they met appellant. The three then walked down a bike path to a picnic area. There, appellant talked to S.P. about "the religion" and its laws. One of the laws, the law of secrecy, meant that "anything that happened tonight, [she] couldn't tell anybody." Appellant told S.P. that members of the group had powers and that to become a member of the group, she would be required to engage in

- 2 -

vaginal or oral sex (S.P. could not remember the third type of sexual act).

{¶ 6} During the conversation, A.P. told S.P. that she was a member of the group and that she had powers, and appellant asked S.P. to join the group. S.P. told appellant and A.P. that she did not want to become a member of the group. Subsequently, the three walked down a path toward a weeded area, at some point, A.P. stopped because she was not allowed to go further, and appellant and S.P. went into a weeded area.

{¶ 7} Once in the weeds, appellant told S.P. to take off her clothes. When she did not, appellant told her "to take them off before I take them off for you." S.P. undressed, as did appellant. He then told her to get on her knees and that he would ask her questions. After S.P. complied, appellant put his hands on her head and his penis into her mouth and moved his hips back and forth, all the while asking her questions. After each question, he would take his penis out of her mouth so that she could answer, and then would put his penis back in her mouth. Eventually, appellant removed his penis, masturbated, and ejaculated into the weeds. The two got dressed and walked back to where A.P. was waiting. Appellant then dropped them off at a convenience store.

{¶ 8} The next day (August 3), S.P. went uninvited to Kaya's home. Whereas S.P. was ordinarily outgoing, talkative, and very energetic, she was not her normal self that day. It was clear something was wrong with her. Following a talk with S.P., Kaya called appellant and asked him what had happened the night before. Appellant told her he did not know what she was talking about. Kaya called A.P. and then called appellant back. When she asked why he had lied to her, appellant replied, "Do you want me to kill myself?" When she asked him why he had destroyed a 13-year-old's life, appellant did not answer.

{¶ 9} At trial, Detective Mark Nichols' videotaped interview of appellant was played to the bench. During the interview, appellant admitted meeting A.P. and S.P. late one evening but claimed it was so that he could see if S.P.'s chest size was similar to his wife's (following

the birth of their child, appellant's wife needed sports bras, and S.P. had old sports bras).[1] Once he realized S.P. was not the right size, appellant talked a few minutes to her and A.P. about his "religious discussion group" and its laws. Appellant told the detective that S.P. wanted to be part of the group, however he did not think she would fit in the group. Appellant denied that one had to be initiated to become part of the group. Appellant denied any sexual conduct with S.P. and told the detective he did not know why A.P. and S.P. accused him of sexual misconduct. Appellant believed S.P. was 14 or 15 years old and knew she was "really young."

{¶ 10} On January 23, 2012, the trial court found appellant guilty as charged. Following a sentencing hearing, the trial court merged the unlawful sexual conduct charge, sentenced appellant to ten years in prison for raping S.P., and classified appellant as a Tier III sex offender.

{¶ 11} Appellant appeals, raising four assignments of error. His first and second assignments of error will be addressed together.

{¶ 12} Assignment of Error No. 1:

{¶ 13} THE TRIAL COURT ERRED TO THE PREJUDICE OF APPELLANT IN OVERRULING HIS MOTIONS FOR ACQUITTAL AND IN ENTERING GUILTY VERDICTS CONTRARY TO APPELLANT'S RIGHT TO DUE PROCESS UNDER THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND SECTION 10, ARTICLE I OF THE OHIO CONSTITUTION.

{¶ 14} Assignment of Error No. 2:

{¶ 15} THE TRIAL COURT ERRED TO THE PREJUDICE OF APPELLANT IN ENTERING GUILTY VERDICTS WHERE SAID VERDICTS WERE CONTRARY TO THE

---

1. At trial, A.P. testified she had a telephone conversation with appellant about bras a couple of days before August 2, 2011. S.P. testified she had a conversation with A.P. about bras sometime before August 2, 2011.

MANIFEST WEIGHT OF THE EVIDENCE.

{¶ 16} Appellant first argues that his conviction for unlawful sexual conduct is against the manifest weight of the evidence because S.P.'s testimony about the alleged sexual conduct was uncorroborated by physical evidence or eyewitnesses and was contradicted by her prior statements to the police. Appellant also argues that his rape conviction is supported by insufficient evidence and is against the manifest weight of the evidence because the state failed to establish he used force or the threat of force when engaging in sexual conduct with S.P.

{¶ 17} When reviewing the sufficiency of the evidence to support a criminal conviction, an appellate court's function is to examine the evidence admitted at trial to determine whether such evidence, viewed in a light most favorable to the prosecution, would convince the average mind of the defendant's guilt beyond a reasonable doubt. *State v. Godby*, 12th Dist. No. CA2005-03-056, 2006-Ohio-205, ¶ 3, citing *State v. Goodwin*, 84 Ohio St.3d 331, 343-44 (1999).

{¶ 18} When considering whether a judgment is against the manifest weight of the evidence in a bench trial, an appellate court will not reverse a conviction where the trial court could reasonably conclude from substantial evidence that the state has proven the offense beyond a reasonable doubt. *Godby* at ¶ 4, citing *State v. Eskridge*, 38 Ohio St.3d 56, 59 (1988). In conducting its review, an appellate court examines the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses, and determines whether in resolving conflicts in the evidence, the trial court "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Cooper*, 12th Dist. No. CA2010-05-113, 2011-Ohio-1630, ¶ 7. The discretionary power to grant a new trial should be exercised only in exceptional cases where the evidence weighs heavily against the conviction. *State v. Thompkins*, 78 Ohio

St.3d 380, 387 (1997).

{¶ 19} In making this analysis, the reviewing court must be mindful that the original trier of fact was in the best position to judge the credibility of witnesses and the weight to be given the evidence. *Cooper* at ¶ 7. A determination that a conviction is supported by the manifest weight of the evidence will also be dispositive of the issue of sufficiency. *State v. Church*, 12th Dist. No. CA2011-04-070, 2012-Ohio-3877, ¶ 10.

{¶ 20} Appellant was convicted of unlawful sexual conduct with a minor, in violation of R.C. 2907.04(A). This statute prohibits anyone, 18 years of age or older, from engaging in sexual conduct with another who is not the spouse of the offender, when the offender knows the other person is 13 years old or older but younger than 16 years old, or the offender is reckless in that regard. "Sexual conduct" includes fellatio. R.C. 2907.01(A).

{¶ 21} S.P. was 13 years old at the time of the incident. Appellant believed she was 14 or 15 years old and knew she was "really young." S.P. testified she performed fellatio on appellant. This testimony, if believed, was enough to convict appellant of unlawful sexual conduct with a minor. In sex offense cases, Ohio courts have consistently held that a victim's testimony need not be corroborated in order to support a conviction. *See State v. Robertson*, 8th Dist. No. 94527, 2011-Ohio-325; *State v. Matha*, 107 Ohio App.3d 756 (9th Dist.1995); *State v. Economo*, 76 Ohio St.3d 56 (1996). As for the contradictions between the victim's statements to the police and her trial testimony, they did not relate to the act of fellatio itself. In addition, a court will not reverse a conviction merely on inconsistencies in a victim's statements because the weight to be given the evidence and the credibility of the witnesses are primarily for the trier of facts. *State v. Sparks*, 9th Dist. No. 22111, 2005-Ohio-2154, ¶ 11.

{¶ 22} We therefore find that appellant's conviction for unlawful sexual conduct with a minor was not against the manifest weight of the evidence.

{¶ 23} Appellant was also convicted of rape, in violation of R.C. 2907.02(A)(2), which states: "No person shall engage in sexual conduct with another when the offender purposely compels the other person to submit by force or threat of force." "'Force' means any violence, compulsion, or constraint physically exerted by any means upon or against a person or thing." R.C. 2901.01(A)(1).

{¶ 24} "A defendant purposely compels another to submit to sexual conduct by force or threat of force if the defendant uses physical force against that person, or creates the belief that physical force will be used if the victim does not submit" to the defendant's actions. *State v. Schaim*, 65 Ohio St.3d 51, 55 (1992). "A threat of force can be inferred from the circumstances surrounding sexual conduct[.]" *Id.* "A victim need not prove physical resistance to the offender" for a defendant to be found guilty of rape. R.C. 2907.02(C).

{¶ 25} "Force need not be overt and physically brutal, but can be subtle and psychological. As long as it can be shown that the rape victim's will was overcome by fear or duress, the forcible element of rape can be established." *Eskridge*, 38 Ohio St.3d at 58-59; *State v. Jordan*, 7th Dist. No. 06 HA 586, 2007-Ohio-3333, ¶ 85. "The force and violence necessary to commit the crime of rape depends upon the age, size and strength of the parties and their relation to each other." *Eskridge* at paragraph one of the syllabus; *State v. Garrett*, 12th Dist. No. CA2008-08-075, 2009-Ohio-5442, ¶ 60.

{¶ 26} As stated earlier, S.P. testified that appellant told her about the group and its law, and the required sex act to become a member of the group when they were at a picnic area. During that conversation, A.P. told her she was a member of the group and had powers. S.P. explained that she did not get up and walk away because she knew A.P. would stay and she "didn't want [A.P.] to get hurt if I left her." S.P. told appellant and A.P. that she did not want to become a member of the group. Neither responded. Instead, the trio eventually left the picnic area and walked toward a weeded area.

{¶ 27} At some point, A.P. stopped walking as she was not allowed to go further, and appellant and S.P. went into a weeded area. S.P. explained that she did not leave appellant then because before reaching the weeds, he had told her "something bad would happen to someone" if she left. She believed appellant's allusion to "someone" referred to A.P. Once in the weeds, appellant ordered S.P. to take off her clothes, warned her he would do it himself if she did not comply, ordered her to get on her knees, and had his hands on her head during the act of fellatio.

{¶ 28} In light of the foregoing, we find that appellant used force (the physical constraint of his hands on S.P.'s head during the act of fellatio) and the threat of force (his orders in the weeded area and his warning something bad would happen to someone) to compel S.P. to perform fellatio on him. *See Schaim*, 65 Ohio St.3d at 55; *Eskridge*, 38 Ohio St.3d at 58-59. Given the evidence, we find that the trial court neither lost its way nor created a manifest miscarriage of justice.

{¶ 29} Appellant, nevertheless, argues that because S.P.'s testimony was contradicted both by her prior statements to the police and by A.P.'s testimony, this clearly shows that neither force nor the threat of force was used to compel S.P. into performing fellatio on him.[2] However, the trial court found that:

> [T]he Court believed all of the testimony of [S.P.] as corroborated by witness Kaya Burbank. The Court found the story related by the defendant in his statement to [Detective Nichols] to be wholly incredulous and not worthy of belief in any of its particulars. Finally, the Court found the testimony of [A.P.] to be highly suspect given her attempt to minimize her conduct and the scorn it engendered with her family, friends, and members of the general public, and only considered that statement as reliable with respect to those portions that were corroborated by [S.P.'s]

---

2. During cross-examination, S.P. admitted that she did not tell the police that appellant (1) told her to disrobe or he would do it himself, (2) told her something bad would happen, and (3) told A.P. she could not come with them into the weeds. At trial, A.P. testified that S.P. voluntarily walked and stayed with her and appellant, agreed to perform fellatio on appellant, and looked fine the entire time. A.P. also testified that appellant did not tell S.P. something bad would happen if she left or declined to cooperate. A.P. stated that she could not see or hear appellant and S.P. when the two were in the weeded area.

testimony.

{¶ 30} Because the credibility of S.P., A.P., and appellant was primarily for the trial court to determine, we find that appellant's rape conviction was not against the manifest weight of the evidence. *See State v. Kash*, 12th Dist. No. CA2002-10-247, 2004-Ohio-415. Our determination that appellant's rape conviction is supported by the weight of the evidence is also dispositive of the issue of sufficiency. *Church*, 2012-Ohio-3877 at ¶ 10.

{¶ 31} Appellant's first and second assignments of error are overruled.

{¶ 32} Assignment of Error No. 3:

{¶ 33} THE TRIAL COURT ERRED TO THE PREJUDICE OF APPELLANT IN ADMITTING EVIDENCE OF OTHER ACTS OF APPELLANT IN VIOLATION OF APPELLANT'S RIGHT TO DUE PROCESS AS GUARANTEED BY THE FIFTH AND FOURTENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND SECTION 10, ARTICLE I OF THE OHIO CONSTITUTION.

{¶ 34} Appellant argues that the trial court improperly admitted Kaya's testimony that appellant requested sex in exchange for her initiation into the group, in violation of Evid.R. 404(B). Appellant also notes that "evidence was also offered about A.P.'s involvement with the group."

{¶ 35} Evid.R. 404(B) provides that "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."

{¶ 36} The decision to admit or exclude relevant evidence is within the sound discretion of the trial court, and its decision will not be disturbed absent an abuse of that discretion. *State v. Bey*, 85 Ohio St.3d 487, 490 (1999). The term "abuse of discretion" implies more than an error of law or judgment. Rather, the term suggests the trial court acted

in an unreasonable, arbitrary, or unconscionable manner. *State v. Barnes*, 12th Dist. No. CA2010-06-009, 2011-Ohio-5226, ¶ 23. Evid.R. 404(B) "affords broad discretion to the trial judge regarding the admission of other acts evidence." *State v. Williams*, Slip Opinion No. 2012-Ohio-5695, ¶ 17.

{¶ 37} "Other acts" evidence is admissible under Evid.R. 404(B) "if (1) there is substantial proof that the alleged other acts were committed by the defendant, and (2) that evidence tends to prove motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." *State v. Lowe*, 69 Ohio St.3d 527, 530 (1994); *State v. Retana*, 12th Dist. No. CA2011-12-225, 2012-Ohio-5608, ¶ 39. "Substantial proof" is not proof "beyond a reasonable doubt." *State v. Bromagen*, 12th Dist. No. CA2005-09-087, 2006-Ohio-4429, ¶ 14.

{¶ 38} In a recent decision, the Ohio Supreme Court held that pursuant to Evid.R. 404(B), "evidence of other crimes, wrongs, or acts of an accused may be admissible to prove intent or plan, even if the identity of an accused or the immediate background of a crime is not at issue." *Williams*, Slip Opinion No. 2012-Ohio-5695 at ¶ 2.

{¶ 39} In *Williams*, the defendant was convicted of rape, gross sexual imposition, and unlawful sexual conduct with a minor, for his abuse of a teenage boy. At trial, the trial court admitted evidence that the defendant had had a similar relationship with a different teenage boy. The Eighth Appellate District reversed the convictions on the ground that the admission of the prior sexual relationship violated Evid.R. 404(B) in part because identity was not an issue. The supreme court reversed the appellate court's decision and reinstated the trial court's decision. The supreme court found that "Evid.R. 404(B) permitted admission of evidence of Williams's prior crime because it helped to prove motive, preparation, and plan on the part of Williams." *Id.* at ¶ 24. Specifically, "[e]vidence that Williams had targeted teenage males who had no father figure to gain their trust and confidence and groom them

for sexual activity with the intent of sexual gratification may be admitted to show the plan of the accused and the intent for sexual gratification." *Id.* at ¶ 25.

{¶ 40} In the case at bar, appellant would target teenage girls and attempt to persuade them to have sex with him by telling them it was an initiation ritual, and that following initiation, being a member of the group would imbue them with special powers. In light of *Williams*, we find that the admission into evidence of appellant's conversation with Kaya about the group was permitted under Evid.R. 404(B) because it helped prove appellant's motive, preparation, and plan. The trial court, therefore, did not abuse its discretion in admitting Kaya's testimony that appellant requested sex in exchange for her initiation into the group.

{¶ 41} Under this assignment of error, appellant also notes that "evidence was also offered about A.P.'s involvement with the group." However, during the bench trial, A.P. only testified that she was a member of the group (which met to study religions, spells, and witchcraft). She also testified she became a member of the group without having to perform any sex act in exchange, and she was not allowed to testify that appellant requested sex from Kaya in exchange for Kaya's initiation into the group.

{¶ 42} Appellant's third assignment of error is accordingly overruled.

{¶ 43} Assignment of Error No. 4:

{¶ 44} THE TRIAL COURT ERRED TO THE PREJUDICE OF APPELLANT AND ABUSED ITS DISCRETION WHEN IT IMPOSED A MAXIMUM PRISON TERM OF TEN YEARS IN THE JUDGMENT OF CONVICTION.

{¶ 45} Appellant argues that given his "minimal" prior criminal record (he only has one conviction for felony obstruction of justice), the trial court abused its discretion by sentencing him to a maximum, ten-year prison term.

{¶ 46} At the outset, we note that on September 30, 2011, the General Assembly

enacted 2011 Am.Sub.H.B. No. 86 (H.B. 86) which revised several sentencing statues. Because appellant was sentenced on March 5, 2012, this legislation is applicable to him. *State v. Rose*, 12th Dist. No. CA2011-11-214, 2012-Ohio-5607, ¶ 76. Further, appellant did not receive the maximum prison term for his rape conviction. H.B. 86 amended the available prison term for first-degree felonies from a maximum prison term of 10 years to a maximum prison term of 11 years. Appellant received 10 years in prison for rape, not 11.

**{¶ 47}** Appellate courts apply a two-step procedure when reviewing felony sentences. First, courts must examine the sentencing court's compliance with all applicable rules and statutes in imposing the sentence to determine whether the sentence is clearly and convincingly contrary to law. *State v. Kalish*, 120 Ohio St.3d 23, 2008-Ohio-4912, ¶ 26. If this first prong is satisfied, the sentencing court's decision is then reviewed for an abuse of discretion. *Id.* at ¶ 4; *Rose* at ¶ 77.

**{¶ 48}** Under the first prong of *Kalish*, a sentence is not clearly and convincingly contrary to law where the trial court considers the purposes and principles of sentencing under R.C. 2929.11 as well as the seriousness and recidivism factors listed in R.C. 2929.12, properly applies postrelease control, and sentences a defendant within the permissible statutory range. *Kalish* at ¶ 18; *Rose*, 2012-Ohio-5607 at ¶ 78.

**{¶ 49}** H.B. 86 amended R.C. 2929.11 which now states that the "overriding purposes of felony sentencing are to protect the public from future crime by the offender and others and to punish the offender using the minimum sanctions that the court determines accomplish those purposes without imposing an unnecessary burden on state or local government resources." However, there is still no "mandate" for the sentencing court to engage in any factual findings under R.C. 2929.11 or R.C. 2929.12. *Rose* at ¶ 78; *State v. Putnam*, 11th Dist. No.2012-L-026, 2012-Ohio-4891, ¶ 9. Rather, the trial court still has discretion to determine whether the sentence satisfies the overriding purpose of Ohio's

sentencing structure. R.C. 2929.12(A).

{¶ 50} The judgment entry of conviction clearly indicates that the trial court considered "the principles and purposes of sentencing under Ohio Revised Code Section 2929.11, and has balanced the seriousness and recidivism factors of Ohio Revised Code Section 2929.12." Furthermore, at the February 28, 2012 sentencing hearing, the trial court specifically referenced the purposes of sentencing as set forth in the newly amended R.C. 2929.11. In addition, appellant was sentenced within the applicable statutory range. Appellant was convicted of rape, a first-degree felony, in violation of R.C. 2907.02(A)(2). Following H.B. 86, the available prison term for a first-degree felony is 3 to 11 years. R.C. 2929.14(A)(1). Because appellant was sentenced to ten years for rape, his sentence was well within the permissible statutory range. The trial court also properly advised appellant of the applicable postrelease control issues. Appellant's sentence is therefore not contrary to law.

{¶ 51} As to the second prong of *Kalish*, appellant argues that the trial court abused its discretion in sentencing him to ten years in prison given his "minimal" prior criminal record. During the sentencing hearing, the trial court noted the young age of S.P., the trauma a rape causes to a young girl, and appellant's lack of remorse, including for putting S.P. or himself in this situation. The trial court also emphasized the fact the rape was well prepared as appellant had "plotted [his] strategy" which included using S.P.'s sister "to lure [S.P.] out into a dark area in a park late in the evening under some subterfuge[.]" After a review of the record, we find no abuse of discretion.

{¶ 52} Appellant's fourth assignment of error is accordingly overruled.

{¶ 53} Judgment affirmed.

HENDRICKSON, P.J. and PIPER, J., concur.

- 13 -

Bressler, J., retired, of the Twelfth Appellate District, sitting by assignment of the Chief Justice, pursuant to Section 6(C), Article IV of the Ohio Constitution.