[Cite as *State v. Cheatham*, 2016-Ohio-5779.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

CLERMONT COUNTY


STATE OF OHIO, :

    Plaintiff-Appellee, :     CASE NO. CA2015-12-100

    - vs - :     O P I N I O N
    9/12/2016

     :

RASHON LAEL ISRAEL CHEATHAM, :

    Defendant-Appellant. :


CRIMINAL APPEAL FROM CLERMONT COUNTY COURT OF COMMON PLEAS
Case No. 15 CR 0144


D. Vincent Faris, Clermont County Prosecuting Attorney, Nicholas Horton, 76 South Riverside Drive, 2nd Floor, Batavia, Ohio 45103, for plaintiff-appellee

Douglas A. Ball, 233 East Main Street, Batavia, Ohio 45103, for defendant-appellant


**PIPER, J.**

{¶ 1} Defendant-appellant, Rashon Lael Israel Cheatham, appeals his convictions in the Clermont County Common Pleas Court for violating a domestic violence civil protection order.

{¶ 2} In April 2014, the Clermont County Common Pleas Court issued a civil protection order prohibiting Cheatham from having any contact with Dayna Brooks, being within 500 feet of her, or entering her residence, regardless of whether she gave him

permission. In June 2014, the Clermont County Sheriff's Office served Cheatham with a copy of the CPO while he was in its jail. The CPO stated that it was effective until April 2015.

{¶ 3} In February 2015, Brooks, along with a female friend and several male companions, returned to her home after a night out. Cheatham was at the home. Whether Cheatham was a welcome guest of Brooks that evening is not clear. However, some of the other men, apparently in an effort to roust Cheatham from the residence, began to fight with him inside and then outside of the house.

{¶ 4} Brooks' female friend called 9-1-1. Two of the male companions fled the area before deputies arrived. Cheatham testified that he went into a detached garage or shed on the property and sat down in a chair with the lights on.

{¶ 5} Three deputies with the Clermont County Sheriff's Office responded to the 9-1-1 call. One interviewed Brooks and her remaining companions. The other two deputies, one with a K9 unit, searched outside the property for Cheatham but did not locate him.

{¶ 6} The deputies then left the house. However, they stayed in the area, believing that Cheatham was likely to return. Twenty minutes later a second 9-1-1 call alerted the deputies that Cheatham had returned.

{¶ 7} This time, the deputies parked their vehicles away from the house and approached stealthily on foot. They could hear Cheatham outside the house imploring to be let in. One of the deputies accidentally triggered a motion-sensing light, which alerted Cheatham to their presence. Cheatham fled, but was quickly apprehended.

{¶ 8} A grand jury indicted Cheatham on two felony counts of violating a protection order. The counts were felonies because a court earlier convicted Cheatham of a misdemeanor violation of the same CPO. The matter proceeded to a bench trial and the court found Cheatham guilty of both counts. At sentencing the court merged the counts

and placed Cheatham on three years of community control. He timely appealed, raising two assignments of error.

{¶ 9} Assignment of Error No. 1:

{¶ 10} THE TRIAL COURT ERRED IN FINDING THAT THE APPELLANT ACTED RECKLESSLY AND THAT HE WAS GUILTY, BEYOND A REASONABLE DOUBT, ON BOTH COUNTS.

{¶ 11} Assignment of Error No. 2:

{¶ 12} THE TRIAL COURT ERRED IN FINDING THAT THERE WERE TWO SEPARTATE [sic] INCIDENTS EVEN THOUGH THE COURT MERGED THEM FOR SENTENCING PURPOSES.

{¶ 13} Cheatham's assignments of error contest the sufficiency and weight of the evidence. The first assignment of error focuses on the trial court's finding that Cheatham acted "recklessly" when he violated the CPO, while the second assignment of error challenges the trial court's finding that there were two separate violations of the CPO.

{¶ 14} When reviewing the sufficiency of the evidence underlying a criminal conviction, an appellate court examines the evidence in order to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. *State v. Paul*, 12th Dist. Fayette No. CA2011-10-026, 2012-Ohio-3205, ¶ 9. The "relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus.

{¶ 15} A manifest weight of the evidence challenge, on the other hand, examines the "inclination of the greater amount of credible evidence, offered at a trial, to support one side of the issue rather than the other." *State v. Barnett*, 12th Dist. Butler No. CA2011-09-

177, 2012-Ohio-2372, ¶ 14.  To determine whether a conviction is against the manifest weight of the evidence, the reviewing court must look at the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether in resolving the conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.  *State v. Graham*, 12th Dist. Warren No. CA2008-07-095, 2009-Ohio-2814, ¶ 66.

{¶ 16}  "While appellate review includes the responsibility to consider the credibility of witnesses and weight given to the evidence, 'these issues are primarily matters for the trier of fact to decide[.]'"  *State v. Barnes*, 12th Dist. Brown No. CA2010-06-009, 2011-Ohio-5226, ¶ 81, quoting *State v. Walker*, Butler App. No. CA2006-04-085, 2007-Ohio-911, ¶ 26.  An appellate court, therefore, will overturn a conviction only in extraordinary circumstances when the evidence presented at trial weighs heavily in favor of acquittal.  *Id.*

{¶ 17}  Although the legal concepts of sufficiency of the evidence and weight of the evidence are both quantitatively and qualitatively different, a "determination that a conviction is supported by the manifest weight of the evidence will also be dispositive of the issue of sufficiency."  *State v. Jones*, 12th Dist. Butler No. CA2012-03-049, 2013-Ohio-150, ¶ 19.

{¶ 18}  The court convicted Cheatham of violations of R.C. 2919.27, which prohibits a person from "recklessly" violating the terms of a protection order.  The Revised Code defines recklessly as follows:

> A person acts recklessly when, with heedless indifference to the consequences, the person disregards a substantial and unjustifiable risk that the person's conduct is likely to cause a certain result or is likely to be of a certain nature.  A person is reckless with respect to circumstances when, with heedless indifference to the consequences, the person disregards a substantial and unjustifiable risk that such circumstances are likely to exist.

- 4 -

R.C. 2901.22(C).

**{¶ 19}** The record indicates that Cheatham's convictions are supported by sufficient evidence and are not against the manifest weight of the evidence. Cheatham testified he received a copy of the CPO and read it.[1] Its terms specifically prohibited him from having any contact with Brooks or entering or interfering with her residence. And on the first page, the CPO states: "[t]he terms of this order shall be effective until April 3, 2015[.]"

**{¶ 20}** Cheatham testified that he knew he could not have contact with Brooks because of the protection order. Nonetheless, he was present at Brooks' home in February 2015, nearly two months before the CPO's expiration. On these facts we conclude that there was sufficient evidence to support the trial court's finding that Cheatham acted recklessly when he violated the terms of the CPO in February 2015 by being at Brooks' residence. *See, e.g.*, *State v. Wisby*, 12th Dist. Clermont No. 2012-06-049, 2013-Ohio-1307.

**{¶ 21}** Cheatham contends that he could not have acted recklessly because he mistakenly believed that the CPO was only effective for six months. He claims that Brooks told him that the CPO expired after six months in a letter she sent to him while he was in jail. And he claimed he fled from police because he was concerned he would be arrested for the fight at Brooks' house and for violating the terms of a separate "probation" order to stay away from Brooks.[2]

**{¶ 22}** The trial court did not believe Cheatham's claim that he mistakenly believed that the CPO expired. We give substantial deference to the trial court's determination of a

---

1. Appellate counsel argues that Cheatham may not have received the CPO while in jail, but rather, a different *ex parte* order. Neither side raised this argument at trial. We have thoroughly reviewed the record and conclude that there is no credible evidence to support this contention.

2. Several days before his arrest, a judge released Cheatham from jail after he had served the majority of his 150-day sentence for the earlier misdemeanor conviction for violation of the same CPO. The judge ordered him to stay away from Brooks as a condition of early release.

witness' credibility. *State v. Moore*, 12th Dist. Warren No. CA2014-10-121, 2015-Ohio-2466, ¶ 17. Moreover, the greater weight of the evidence indicated Cheatham was aware that the CPO had not expired. He read the CPO after receiving it in jail. The state previously charged him with violating its terms and won a conviction. Finally, he fled from police while committing acts in violation of the CPO.

{¶ 23} After thoroughly reviewing the evidence in a light most favorable to the prosecution, we find that there was sufficient evidence to support Cheatham's convictions. We cannot find that the trial court clearly lost its way or created such a manifest miscarriage of justice that the convictions must be reversed and a new trial ordered. We therefore overrule Cheatham's first assignment of error.

{¶ 24} Cheatham's second assignment of error challenges the sufficiency and weight of the evidence supporting the trial court's finding that there were two violations of the CPO. The gist of Cheatham's argument is that he did not flee the first time deputies arrived but simply moved to the garage, where he went undiscovered. Thus, Cheatham argues that the evidence demonstrates a single violation of the CPO.

{¶ 25} As before, whether Cheatham fled the property or merely hid in the detached garage was a question of fact for the trial court, who is in a better position than us to determine the credibility of testimony. Two deputies who responded to the first 9-1-1 call testified that they searched the property. One deputy searched with his K9 unit. That deputy testified that the K9 unit was trained to pick up human scent and did not indicate that anyone was in the garage. Thus, the record contains some credible evidence supporting the trial court's finding that Cheatham was on Brooks' property, fled, and then returned. Accordingly, we overrule Cheatham's second assignment of error.

{¶ 26} Judgment affirmed.

M. POWELL, P.J., and S. POWELL, J., concur.