[Cite as *State v. Allgeyer*, 2018-Ohio-1893.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

CLINTON COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Plaintiff-Appellee, | : | CASE NO.  CA2017-06-007 |
| | : | O P I N I O N |
| - vs - | | 5/14/2018 |
| | : | |
| NICOLE ALLGEYER, | : | |
| Defendant-Appellant. | : | |

CRIMINAL APPEAL FROM CLINTON COUNTY COURT OF COMMON PLEAS
Case No. CRI 16500105

Richard W. Moyer, Clinton County Prosecuting Attorney, Brian Shidaker, 103 East Main Street, Wilmington, Ohio 45177, for plaintiff-appellee

Rose & Dobyns Co., LPA, Blaise S. Underwood, 97 North South Street, Wilmington, Ohio 45177, for defendant-appellant

**RINGLAND, J.**

{¶ 1}  Defendant-appellant, Nicole Allgeyer, appeals from her conviction in the Clinton County Court of Common Pleas for grand theft.  For the reasons detailed below, this court affirms Allgeyer's conviction.

{¶ 2}  On April 25, 2016, a Clinton County grand jury indicted Allgeyer on one count of grand theft, a violation of R.C. 2913.02(A)(2), and a felony of the fourth degree.  The

indictment arose from allegations that Allgeyer stole over $14,000 from the Clinton-Massie School District Pee Wee cheerleading team while acting as its director between August 2013 and April 2015. The matter proceeded to a jury trial in March 2017.

{¶ 3} The state introduced testimony from several parents who served in leadership roles in the cheer organization before and during Allgeyer's time as director. Allgeyer possessed the organization's bank card and was authorized to use it in conjunction with purchases for the organization. The treasurer during Allgeyer's directorship testified that she began noticing suspect transactions on the organization's bank statements. The treasurer asked Allgeyer to produce receipts. Allgeyer promised to give the treasurer receipts but did not. Eventually, concerned parents contacted law enforcement, who began an investigation.

{¶ 4} A detective with the Clinton County Sheriff's Office subpoenaed the organization's bank records. He identified numerous suspect transactions occurring at restaurants, gas stations, general merchandise and grocery stores, and ATM cash withdrawals. Many of the items purchased were inconsistent with the typical needs of the cheer organization. The state introduced into evidence documentary exhibits including the organization's bank statements, receipts from various stores where the organization bank card was used, and a summary of suspect transactions.

{¶ 5} In her defense, Allgeyer introduced testimony from another parent involved in the cheer organization who indicated that others in the group used the bank card.

{¶ 6} The jurors found Allgeyer guilty and further found that the value of property involved was greater than $7,500 but less than $150,000, resulting in a fourth-degree felony conviction. The court sentenced Allgeyer to a term of community control and ordered her to make restitution in the amount of $7,501. Allgeyer appeals, raising two assignments of error, which we address together.

{¶ 7} Assignment of Error No. 1:

{¶ 8} APPELLANT'S CONVICTION MUST BE REVERSED AS IT IS NOT SUPPORTED BY SUFFICIENT EVIDENCE.

{¶ 9} Assignment of Error No. 2:

{¶ 10} APPELLANT'S CONVICTION MUST BE REVERSED AS IT IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶ 11} Allgeyer contends there was insufficient evidence admitted at trial from which the jurors could conclude that she knew that her use of the organization's funds went beyond its express or implied consent. In this regard, Allgeyer points to the informality of the organization and lack of written rules. And Allgeyer argues that the jurors lost their way in convicting her because of a lack of evidence that she possessed the bank card or used it to make the suspect purchases.

{¶ 12} When reviewing the sufficiency of the evidence underlying a criminal conviction, an appellate court examines the evidence to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. *State v. Bradbury*, 12th Dist. Butler No. CA2015-06-111, 2016-Ohio-5091, ¶ 16. The "relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus.

{¶ 13} A manifest weight of the evidence challenge, on the other hand, examines the "inclination of the greater amount of credible evidence, offered at a trial, to support one side of the issue rather than the other." *State v Barnett*, 12th Dist. Butler No. CA2011-09-177, 2012-Ohio-2372, ¶ 14. To determine whether a conviction is against the manifest weight of the evidence, the reviewing court must look at the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether in

- 3 -

resolving the conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *Id.* An appellate court will overturn a conviction due to the manifest weight of the evidence only in extraordinary circumstances when the evidence presented at trial weighs heavily in favor of acquittal. *Id.* at ¶ 15. A "determination that a conviction is supported by the manifest weight of the evidence will also be dispositive of the issue of sufficiency." *State v. Jones*, 12th Dist. Butler No. CA2012-03-049, 2013-Ohio-150, ¶ 19.

{¶ 14} The jurors found Allgeyer guilty of grand theft under R.C. 2913.02(A)(2), which provides: "[n]o person, with purpose to deprive the owner of property or services, shall knowingly obtain or exert control over either the property or services * * * [b]eyond the scope of the express or implied consent of the owner or person authorized to give consent."

{¶ 15} Jody Tolle, who had been involved with the cheer organization since 2008 or 2009 and was its treasurer in 2012, testified that the organization was a Pee Wee cheerleading group that supported the Pee Wee football team. It involved children in the third through sixth grades. The organization had no written policies, bylaws, or rules. However, the director was generally in charge of the organization. The director's responsibilities included ordering uniforms, warm-up clothing, and bows for the cheerleaders. The director would also need to purchase supplies in conjunction with the organization's fundraising events, which included an annual car wash and cookie dough sale. The director possessed the organization's bank card to make these purchases. The bank card was used infrequently and most purchases would have occurred in the spring or fall.

{¶ 16} If the director made a purchase using the bank card, the director was expected to give the treasurer a receipt for that purchase. The treasurer would check the receipt against the organization's bank records and then file the receipt. The treasurer's role was to monitor the organization's funds. The organization's funds were generated exclusively by

fundraising efforts and fees paid by the cheerleaders' parents.

{¶ 17}   Tolle testified that the director was not permitted to use the bank card to buy personal items as a form of reimbursement.  The organization also did not pay for or reimburse its leadership or members for fuel expenses.  The director would not have needed to use cash for purchases.  Tolle testified that Allgeyer had no special privileges as director.

{¶ 18}   Tolle and another parent, Brandalon Cordy, opened the organization's bank account in 2012 and their names were on the account.  Cordy testified that she acted as a treasurer for the organization in 2013, when Allgeyer became organization director. Cordy testified that Allgeyer had possession of the organization bank card in 2013.  Allgeyer initially provided Cordy with receipts for purchases.

{¶ 19}   Later, Cordy noticed suspect transactions on the organization's bank account statements.  Specifically, Cordy recalled seeing a charge for a Frisch's restaurant.  Cordy asked Allgeyer about the charge and Allgeyer explained that her son accidentally used the card at Frisch's.  Allgeyer claimed she would reimburse the organization but never did. Thereafter, Cordy would ask Allgeyer for receipts for suspect transactions.  Allgeyer told Cordy that she would provide receipts but never did.

{¶ 20}   After Cordy observed ongoing suspicious transactions on the account she decided that she and Tolle needed to remove their names from the account.  Allgeyer agreed to meet with Tolle and Cordy at the bank.  Tolle and Cordy removed their names from the account and transferred the account to Allgeyer and a successor treasurer, Sara Reynolds. Cordy had Allgeyer sign a hand-written document that stated that Allgeyer agreed that she took "full financial responsibility" for the organization checking account in 2013 and 2014.

{¶ 21}   Sara Reynolds had been the director of the organization for three months in 2013. Reynolds testified that she provided receipts for all purchases to either Tolle or Cordy while acting as director.  Reynolds testified that it was "clear" that the bank card and funds

were to be used solely for the organization and the benefit of the cheerleaders. Reynolds stepped down as director in August 2013. Allgeyer then became the director.

{¶ 22} Dr. David Baits, then superintendent of Clinton-Massie school district, testified that members of the organization raised concerns with him over Allgeyer's use of the organization's monies. Dr. Baits convened two meetings with concerned parents. Dr. Baits invited Allgeyer to the meetings and asked that she bring documentation. Allgeyer did not go to either meeting and did not provide Dr. Baits with any documentation.

{¶ 23} Detective Sergeant Robert Gates testified concerning his criminal investigation. While reviewing the organization's bank records, he identified many suspicious transactions on the account. The transactions began in September 2013 – contemporaneous with the start of Allgeyer's directorship – and ended in December 2014. During this time, the bank card was used to make purchases at various gas stations, general merchandise and grocery stores, 20 restaurants, and one tanning salon.

{¶ 24} The bank card was used 11 times at Kroger for charges totaling approximately $474. Detective Gates obtained Kroger records related to these purchases and matched those purchases to a Kroger Plus member account associated with Allgeyer's home address. Purchases at Kroger included Starbucks Frappuccinos and macchiatos, soft drinks, milk, cheese, sour cream, candy, cookies, chips, taco seasoning, chill beans, dip, a 12-pack of Miller Lite beer, a 6-pack of Yuengling, a bottle of Kamchatka vodka, deodorant, shampoo, makeup, a nail kit, toothpaste, and a feminine care product. There were also Kroger fuel charges.

{¶ 25} The bank card was used over 70 times for approximately $1,200 in purchases at gas stations including BP, Shell, Marathon, Sunoco, Speedway, UDF, and Thornton's.

{¶ 26} The bank card was used four times in May and June of 2014 at a Rural King. Items purchased included de-wormer, a horse brush, goat meal, and 50 pounds of swine

pellets feed.

{¶ 27}   In June 2014, the bank card was used for a $145 purchase at Niketown in Chicago.  Detective Gates testified that this purchase coincided with a trip that Allgeyer took to Chicago.  In addition, there was a bank card purchase a day earlier at Love's Country Store, which is located on Interstate 74 between Cincinnati and Indianapolis and would have been on the expected driving route to Chicago.

{¶ 28}   Finally, Detective Gates testified that the bank card was used to withdraw cash 23 times.  Cash withdrawals ranged from $20 to $320 and totaled $2,243.

{¶ 29}   Based on the foregoing evidence, this court concludes that rational jurors could find Allgeyer guilty of theft under R.C. 2913.02(A)(2).  A similar case from Mahoning County involved a defendant who served as the president of a school parent teacher association ("PTA").  *State v. Seeds*, 7th Dist. Mahoning No. 16 MA 0055, 2017-Ohio-9069. There, the defendant used the PTA's bank card to obtain over $6,000 in cash from ATM withdrawals and another $3,050 in "cash back" after making purchases at various stores.  *Id*. at ¶ 3, 14.  The defendant also used the card at various restaurants and for $320 in fuel.  *Id*. The state alleged that these transactions went beyond the scope of the express or implied consent of the PTA.

{¶ 30}   Multiple witnesses at the PTA president's trial testified to a known formal process for seeking reimbursement from PTA funds.  *Id.* at ¶ 25.  A person would have to provide the PTA board with a receipt and the board would then need to approve reimbursement.  *Id*. at ¶ 15.  However, the defendant did not seek approval for any of the suspect expenditures, did not provide the board with any receipts, and also refused to provide two PTA treasurers with bank statements and financial records.  *Id*. at ¶ 25, 27. The court held that these facts constituted evidence sufficient to find that the defendant's expenditures were made without the consent of the PTA board and that the defendant's

conviction for theft under R.C. 2913.02(A)(2) was supported by the greater weight of the evidence. *Id.* at ¶ 29, 36.

{¶ 31} Similarly, the testimony of Tolle, Cordy, and Reynolds established that the cheer organization, despite having no written rules, had a well-known informal policy with respect to spending the organization's monies. Jurors could reasonably surmise that Allgeyer was aware of the organization's policies given her role as director. Allgeyer ignored the organization's rules by failing to provide Cordy with receipts for her use of the bank card. More revealing, Allgeyer failed to provide Cordy with receipts after Cordy requested them and did not provide requested documentation of her activities to Dr. Baits. Jurors could reasonably conclude that Allgeyer's failure to provide receipts to Cordy and documentation to Dr. Baits indicated that she subjectively knew that her use of the bank card to purchase meals, gas, alcohol, livestock supplies, and a tanning session was improper.

{¶ 32} Finally, Allgeyer argues that the jurors lost their way because no evidence established that she had the card continuously after receiving it in 2013. The only evidence to indicate someone other than Allgeyer had possession of the card was Allgeyer's witness, Leah Loveless, who testified that some cheer coaches used the bank card as well. However, jurors could conclude that even if other parents possessed the card at times, the cumulative evidence strongly indicated that all the suspect transactions were undertaken by Allgeyer.

{¶ 33} Allgeyer also argues that no evidence indicated that she used the bank card. Allgeyer's counsel thoroughly cross-examined Detective Gates on this subject at trial. Counsel asked whether the detective had any video evidence indicating that Allgeyer made the suspect purchases. Detective Gates admitted that he either did not possess any video evidence or that video evidence was unavailable by the time he contacted the store.

{¶ 34} Despite the lack of direct evidence, the state introduced circumstantial evidence of Allgeyer's use of the card. The Kroger purchases were made using a Kroger

Plus account associated with Allgeyer's home address. Furthermore, the bank card's use at Niketown corresponded with Allgeyer's trip to Chicago and at a country store on the route to Chicago. And there was no real dispute that Allgeyer primarily possessed the card in her role as director of the organization. Consequently, credible circumstantial evidence supported the jurors' conclusion that Allgeyer not only possessed the card but used it to make the suspect purchases.

**{¶ 35}** Based on the evidence admitted at trial, this court concludes that rational jurors could find Allgeyer guilty beyond a reasonable doubt of theft under R.C. 2913.02(A)(2). The jurors did not lose their way and Allgeyer's conviction is supported by the manifest weight of the evidence. Our decision with respect to the weight of the evidence is dispositive of the issue of sufficiency. *Jones*, 2013-Ohio-150 at ¶ 19. Accordingly, this court overrules Allgeyer's first and second assignments of error.

**{¶ 36}** Judgment affirmed.

HENDRICKSON, P.J., and M. POWELL, J., concur.