[Cite as *State v. George*, 2023-Ohio-2016.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BUTLER COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Appellee, | : | CASE NO. CA2022-10-093 |
| | : | O P I N I O N |
| - vs - | | 6/20/2023 |
| | : | |
| TYLER R. GEORGE, | : | |
| Appellant. | : | |

CRIMINAL APPEAL FROM HAMILTON MUNICIPAL COURT
Case No. 22CRB01936-A

Laura Gibson, City of Hamilton Prosecuting Attorney, for appellee.

Christopher P. Frederick, for appellant.

**HENDRICKSON, P.J.**

{¶ 1} Appellant, Tyler R. George, appeals from his conviction in the Hamilton Municipal Court for cruelty to a companion animal. For the reasons set forth below, we affirm his conviction.

{¶ 2} On August 24, 2022, appellant was charged by complaint with one count of cruelty to a companion animal in violation of R.C. 959.131(B), a misdemeanor of the first degree. The charges arose out of allegations that on August 22, 2022, appellant struck his

dog, a pit bull named "Lady Bear," multiple times with a bat at his home in Hamilton, Ohio.

{¶ 3} Appellant pled not guilty to the charge and a bench trial was held on September 14, 2022. The state presented testimony from appellant's next-door neighbor Christy Case and from Deputy Megan Niehaus, a Humane Agent and Dog Warden with the Butler County Sheriff's Office. Case testified that as appellant's neighbor, she is aware that appellant has two smaller dogs that are chihuahuas and one larger dog that is a pit bull. Case has a Ring doorbell camera, or a security camera, on both her front and back doors. The Ring cameras are activated by movement. At approximately 12:18 p.m. on August 22, 2022, Case's backdoor Ring camera was activated by motion and she received an alert on her cell phone. She accessed the Ring camera's footage, which displayed her backyard and a portion of appellant's backyard. The footage, which contained both a video and an audio display, captured appellant "beating his dog, the biggest dog with a baseball bat."

{¶ 4} Case contacted the Butler County Dog Warden to report appellant's actions, and she provided the dog warden with a copy of the Ring doorbell security footage. Later that week, Case spoke with appellant about the incident. Case indicated appellant apologized to her and stated he "regretted beating her, beating the dog." Appellant told Case that he beat the dog after arriving home and finding out that one of the chihuahuas had been injured by the pit bull. Case did not know whether the bat appellant used to beat the pit bull was a "wiffle bat" or an "actual bat."

{¶ 5} Deputy Niehaus testified that after receiving Case's report of the incident, she watched the Ring security footage. The footage, which was played at trial and admitted into evidence, showed appellant following the pit bull around the backyard and striking the dog three times with a bat, all while screaming profanities at it.

{¶ 6} On August 23, 2022, the day after the incident, Deputy Niehaus went to appellant's home and spoke with him. Appellant advised Deputy Niehaus that he was

"punishing [the pit bull] for biting his smaller dog" and that he had used a "child's bat." Although appellant offered to show Deputy Niehaus the bat he used to strike Lady Bear, Deputy Niehaus declined to look at it. At trial, Deputy Niehaus indicated she did not look at the bat or procure it as evidence as she felt the Ring doorbell security footage provided enough evidence of appellant's wrongdoing.

{¶ 7} Lady Bear was removed from appellant's custody on August 23, 2022 and examined by a veterinarian the following day. Lady Bear did not exhibit any visible physical injuries. However, Deputy Niehaus testified Lady Bear exhibited behavior that indicated she was afraid of being struck. Lady Bear flinched and dropped to the ground when being scanned for a microchip.

{¶ 8} Following Deputy Niehaus's testimony, the state rested its case. Appellant moved for acquittal pursuant to Crim.R. 29, but his motion was denied. Thereafter, appellant took the stand in his own defense. Appellant claimed that when he arrived at home for a lunch break on August 22, 2022, his wife informed him that Lady Bear had "attacked" one of the chihuahuas. The chihuahua had two visible injuries to its side and had to be treated by a veterinarian. Appellant stated he "freaked," "lost [his] mind," and "grabbed the first thing [he] s[aw] in the yard, which was that red bat." Appellant testified that the bat was a "plastic kid's bat." He denied using the bat to injure Lady Bear, claiming he only used it to scare the dog by hitting the fence and bushes.

{¶ 9} Appellant admitted to striking Lady Bear with the bat one time. He claimed the Ring security footage did not accurately portray his interaction with Lady Bear as the video did not show that he "barely hit her * * *[as] [t]he branches and the fence took the impact." He claimed that "[t]he video sounds worser than what it really was." The plastic bat appellant claimed to have used to strike Lady Bear was admitted into evidence as a defense exhibit, as were pictures of the injuries Lady Bear caused to the chihuahua.

{¶ 10} Following closing arguments by the parties, the court took the matter under advisement.  A few days later, on September 16, 2022, the trial court found appellant guilty of cruelty to a companion animal.  In finding appellant guilty, the court noted that appellant's testimony was "less than fully credible" whereas testimony from the state's witnesses "was completely and totally unbiased, from people that didn't have any axe to grind with [appellant]."  Relying on the Ring doorbell footage, the court stated the following:

> The doorbell, the video from this case, shows the [appellant] with a baseball bat violently striking his dog multiple times.  He is in an uncontrollable rage.  He is yelling.  He even said in his testimony he lost his mind.  The anger in his voice is evident as it can be, as he is using curse words as he is striking his dog, which I'm not going to repeat because they're too foul with – too disturbing to try and think about all of that again.
>
> * * *
>
> Well, animal cruelty is exactly what he did.  He terrorized the dog.  And if you look at the video, you can't come to any other conclusion other than that.  And I'm finding him to be guilty.
>
> * * *
>
> His – his defense also involved the fact that he used a bat that was a plastic bat.  It's a hard plastic bat, that if you struck a person in the face with it, you would probably break their face.
>
> You would probably take their – ruin their vision.  You would cause welts on it at the very least.  It's a weapon and it can cause serious physical harm.  To me it's not a defense, it's part of the problem.
>
> The fact that there was no injuries that were noted by a veterinary exam the day after the incident, that doesn't mean that he didn't terrorize the dog that day, because he did.
>
> * * *
>
> [A]nd then finally, the [appellant] knew he did wrong.  He apologized to his neighbor for doing it.  And so for all of those reasons, I'm going to find the [appellant] to be guilty.

The court subsequently sentenced appellant to 90 days in jail, with all 90 days suspended,

imposed two years of supervised community control, and ordered Lady Bear to be turned over to the Butler County Dog Warden.

{¶ 11} Appellant appealed his conviction, raising two assignments of error for review. As the assignments of error are related, we address them together.

{¶ 12} Assignment of Error No. 1:

{¶ 13} MR. GEORGE'S FEDERAL AND STATE CONSTITUTIONAL RIGHTS TO DUE PROCESS AND A FAIR TRIAL WERE VIOLATED WHEN THE TRIAL COURT OVERRULED HIS CRIMINAL RULE 29 MOTION AFTER THE STATE FAILED TO PROVE BEYOND A REASONABLE DOUBT THAT MR. GEORGE KNOWINGLY COMMITTED AN ACT OF CRUELTY AGAINST HIS PIT BULL, LADY BEAR.

{¶ 14} Assignment of Error No. 2:

{¶ 15} MR. GEORGE'S CONVICTION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AS THE TRIAL COURT DID NOT RENDER AN APPROPRIATE VERDICT IN LIGHT OF THE EVIDENCE PRESENTED AT TRIAL.

{¶ 16} In his first assignment of error, appellant argues the trial court erred in denying his Crim.R. 29 motion for acquittal because the state failed to present proof beyond a reasonable doubt that Lady Bear "suffered from an act of cruelty." In his second assignment of error, he argues his conviction is against the manifest weight of the evidence as the evidence did not demonstrate he "knowingly" inflicted cruelty on Lady Bear. Rather, appellant contends that the evidence introduced at trial "[a]t best * * * indicated [he] acted recklessly or negligently when he punished Lady Bear." He further contends that the manifest weight of the evidence does not support a finding that he "was aware his discipline could have caused unjustifiable pain and suffering" by Lady Bear.

{¶ 17} Crim.R. 29(A) provides that "[t]he court on motion of a defendant or on its own motion, after the evidence on either side is closed, shall order the entry of a judgment of

acquittal of one or more offenses charged in the indictment, information, or complaint, if the evidence is insufficient to sustain a conviction of such offense or offenses." An appellate court reviews the denial of a Crim.R. 29(A) motion under the same standard as that used to review a sufficiency-of-the-evidence claim. *State v. Haines*, 12th Dist. Clermont No. CA2021-07-040, 2022-Ohio-1145, ¶ 32.

{¶ 18} Whether the evidence presented at trial is legally sufficient to sustain a verdict is a question of law. *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997); *State v. Grinstead*, 194 Ohio App.3d 755, 2011-Ohio-3018, ¶ 10 (12th Dist.). When reviewing the sufficiency of the evidence underlying a criminal conviction, an appellate court examines the evidence in order to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. *State v. Paul*, 12th Dist. Fayette No. CA2011-10-026, 2012-Ohio-3205, ¶ 9. Therefore, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus.

{¶ 19} A manifest weight of the evidence challenge, on the other hand, examines the "inclination of the greater amount of credible evidence, offered at a trial, to support one side of the issue rather than the other." *State v. Barnett*, 12th Dist. Butler No. CA2011-09-177, 2012-Ohio-2372, ¶ 14. To determine whether a conviction is against the manifest weight of the evidence, the reviewing court must look at the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether in resolving the conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *State v. Graham*, 12th Dist. Warren No. CA2008-07-095, 2009-Ohio-2814, ¶ 66. "While appellate review includes the responsibility to consider the credibility of witnesses

and weight given to the evidence, 'these issues are primarily matters for the trier of fact to decide.'" *State v. Barnes*, 12th Dist. Brown No. CA2010-06-009, 2011-Ohio-5226, ¶ 81, quoting *State v. Walker*, 12th Dist. Butler No. CA2006-04-085, 2007-Ohio-911, ¶ 26. An appellate court, therefore, will overturn a conviction due to the manifest weight of the evidence only in extraordinary circumstances when the evidence presented at trial weighs heavily in favor of acquittal. *Id.*, citing *Thompkins*, 78 Ohio St.3d at 387. Furthermore, although the legal concepts of sufficiency of the evidence and weight of the evidence are both quantitatively and qualitatively different, "[a] determination that a conviction is supported by the manifest weight of the evidence will also be dispositive of the issue of sufficiency." *State v. Jones*, 12th Dist. Butler No. CA2012-03-049, 2013-Ohio-150, ¶ 19.

{¶ 20} Appellant was convicted of cruelty against a companion animal in violation of R.C. 959.131(B), which provides that "[n]o person shall knowingly torture, torment, needlessly mutilate or maim, cruelly beat, poison, needlessly kill, or commit an act of cruelty against a companion animal." The statute provides that the terms "cruelty," "torment," and "torture" have the same meanings as in R.C. 1717.01. R.C. 959.131(A)(2). Pursuant to 1717.01(B), "'[c]ruelty,' 'torment,' and 'torture' include every act, omission, or neglect by which unnecessary or unjustifiable pain or suffering is caused, permitted or allowed to continue, when there is a reasonable remedy or relief." A person acts knowingly when, regardless of purpose, the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature. R.C. 2901.22(B).

{¶ 21} After reviewing the record, weighing inferences and examining the credibility of the witnesses, we find that appellant's conviction for cruelty to a companion animal is supported by sufficient evidence and is not against the manifest weight of the evidence. The state presented testimony and evidence from which the trier of fact could have found all the essential elements of the offense proven beyond a reasonable doubt. The Ring

doorbell security footage clearly showed appellant in a profanity-laden rage swinging a bat at Lady Bear and striking the dog multiple times. The video footage combined with appellant's admission to Case that he "beat" Lady Bear and his admission to Deputy Niehaus that he struck the pit bull demonstrated that he tortured and cruelly beat his companion animal.

{¶ 22} Contrary to his assertions, the record demonstrates appellant acted knowingly when he grabbed the bat and struck Lady Bear with it multiple times. Regardless of whether his intent was to "discipline" the dog as he claims, appellant was aware that striking Lady Bear repeatedly with a bat was cruel and brought about unnecessary pain and suffering to the dog. The fact that there were no visible injuries to Lady Bear did not mean that Lady Bear did not suffer unnecessary pain or suffering. The dog can be seen on the video footage trying to dart away from appellant's beating and when she was examined in the days following the attack, she exhibited signs of trauma by flinching and dropping to the ground when being scanned for a microchip. Furthermore, as appellant was charged under division (B) of R.C. 959.131 rather than division (C) of the statute, the state was not required to prove "serious physical harm" to Lady Bear to sustain a conviction against appellant. *See State v. Banks*, 1st Dist. Hamilton Nos. C-200395 and C-200396, 2021-Ohio-4330, ¶ 27-31 (finding a defendant's convictions for cruelty to companion animals were supported by sufficient evidence and were not against the manifest weight of the evidence where the dogs who had been stuck with a rod multiple times were cowered, though without visible injuries).

{¶ 23} The trier of fact heard testimony from appellant that he did not harm Lady Bear, but merely scared her by primarily hitting the fence and trees in the backyard. The trial court compared appellant's testimony of the actions he took to "discipline" his dog to the Ring security footage, which captured appellant's words and actions on August 22,

2022. We have reviewed the security footage and agree with the trial court that aggressively striking a dog with a hard plastic bat numerous times while in a fit of rage does not amount to discipline. Not only was the alleged "discipline" administered by appellant remote in time from the incident in which Lady Bear injured the smaller dog, but his actions were excessive and amounted to cruelty, torture, and torment as defined by R.C. 1717.01(B).

{¶ 24} Accordingly, given the evidence admitted at trial, we find that appellant's conviction of cruelty to a companion animal is supported by sufficient evidence and is not against the manifest weight of the evidence. Appellant's first and second assignments of error are overruled.

{¶ 25} Judgment affirmed.

PIPER and M. POWELL, JJ.., concur.