OPINION
{¶ 1} Defendant-appellant, Patricia L. Bailey, appeals her conviction from the Fayette County Court of Common Pleas for the offenses of obstructing official business and dereliction of duty.
 {¶ 2} Appellant was an off-duty Fayette County Deputy Sheriff in October 2006 when she was accused of obstruction and dereliction of duty in connection with the service of a protection order on her brother. Appellant's case was tried to a jury, which returned a guilty *Page 2 
verdict on both counts. After sentencing, appellant initiated this appeal, setting forth three assignments of error for our review.
 {¶ 3} Assignment of Error No. 1:
 {¶ 4} "APPELLANT'S CONVICTION PURSUANT TO R.C. § 2921.31 WAS SUPPORTED BY INSUFFICIENT EVIDENCE AND /OR WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
 {¶ 5} When reviewing a challenge to the sufficiency of the evidence to support a criminal conviction, the relevant question is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. State v. Hancock, 108 Ohio St.3d 57,2006-Ohio-160, ¶ 34; State v. Blanton, Madison App. No. CA 2005-04-016,2006-Ohio-1785, ¶ 6.
 {¶ 6} A court considering whether a conviction was against the manifest weight of the evidence must review the entire record, weighing the evidence and all reasonable inferences, and consider the credibility of witnesses. Hancock at ¶ 39. The question is whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed. Id.; Blanton at ¶ 7.
 {¶ 7} The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction. State v. Thompkins, 78 Ohio St.3d 380, 387,1997-Ohio-52. We must be mindful that the original trier of fact was in the best position to judge the credibility of witnesses and the weight to be given the evidence. See State v. DeHass (1967), 10 Ohio St.2d 230,231. A unanimous concurrence of all three judges on the court of appeals panel reviewing the case is required to reverse a judgment on the weight of the evidence in a jury trial. Thompkins at 389.
 {¶ 8} The record of the trial in this matter reveals that the wife ("petitioner") of John *Page 3 
Bailey obtained an ex parte domestic violence civil protection order ("CPO") against her husband on October 25, 2006. The CPO ordered John Bailey, who had previously been a deputy with the Fayette County Sheriff's Office, to immediately vacate the residence.
 {¶ 9} Fayette County Sheriff's Deputy Ernest Jackson served John Bailey with the CPO at the residence at approximately 10:30 p.m. Deputy Jackson reported over the phone to his supervisor that John Bailey was agitated after receiving the CPO. The supervisor, Corporal John Hyer,[1] called appellant, who was John Bailey's sister and a Fayette County Sheriff's deputy, to tell her that a CPO had just been served on her brother. The corporal testified that appellant, who was off duty at the time, "angrily" asked him how long he had known "about this," and hung up.
 {¶ 10} Part of the order in the CPO included instructions that John Bailey turn over all deadly weapons in his possession to the law enforcement agency serving the order, and a specific notation that all firearms should be turned over "immediately to the Fay[ette] Co. Sheriff's Dept."
 {¶ 11} Deputy Jackson asked for another deputy to respond to the residence because he needed an additional vehicle to transport the large number of guns found there. Deputy T.J. Olsen arrived at the house and found Deputy Jackson and John Bailey in the kitchen. Deputy Olsen indicated that he reached the house shortly after 11:30 p.m., and appellant arrived "just minutes" after he did.
 {¶ 12} John Bailey asked appellant to interpret the CPO for him. Deputy Olsen said appellant read the document, and discussed with her brother the fact that the box was not checked before the paragraph that prohibited the removal or destruction of property possessed by persons protected by the CPO. *Page 4 
 {¶ 13} Deputy Olsen testified that appellant told John Bailey that if a box was not checked, he did not have to comply with it. John Bailey reportedly said that was what he had thought. Olsen said John Bailey uttered an expletive, walked out of the room, broke a glass frame on a family picture, and returned to the kitchen.
 {¶ 14} Deputy Olsen testified that he and a person he later learned was John Bailey's teenage son walked to the basement, where Deputy Olsen began "lining up" the various firearms. Appellant and Deputy Jackson came down to the basement some time thereafter.
 {¶ 15} Deputy Olsen stated that appellant was talking on her cell phone when she made the statements that John Bailey did not own all of these guns and some of them belonged to their grandfather. She reportedly said Deputy Jackson is not taking them; she was taking the guns that belonged to their grandfather.
 {¶ 16} Sgt. David Bivens, from the Fayette County Sheriff's Office, testified that the petitioner for the CPO called him after he began his shift at 11 p.m., complaining that appellant was engaging in "telephone harassment," calling her and leaving voicemails on her cell phone. Sgt. Bivens testified that he called appellant on her cell phone and instructed her to stop making phone calls to John Bailey's wife.
 {¶ 17} Sgt. Bivens stated that he also received a phone call from Deputy Jackson that evening, informing him that John Bailey had caused some damage to the home. Sgt. Bivens testified that he heard appellant in the background during the phone call, and asked to talk with her. Biven said he instructed appellant to calm her brother and remove him from the premises. Sgt. Bivens indicated that appellant asked whether some of the guns that did not belong to her brother could be excluded from seizure. Sgt. Bivens said he told appellant he did not have the authority to exempt those guns from the court order, and ownership could be determined later.
 {¶ 18} Deputy Olsen testified that he found more than ten, but probably fewer than 20 *Page 5 
long guns in the basement, along with other "weapons." While appellant and Deputies Olsen and Jackson were in the basement, Olsen heard glass breaking upstairs. Deputy Olsen said appellant and Deputy Jackson went upstairs to investigate, and Deputy Olsen grabbed four or five guns and left the basement.
 {¶ 19} As Deputy Olsen reached the top of the basement stairs, he encountered appellant. Deputy Olsen testified that appellant told him that he could not arrest John Bailey because Bailey was tearing up his own house. Olsen testified that he did not see large portions of the house, but recalled seeing broken glass on the carpet, paint thrown on the walls, "graffiti" on the walls, and some damaged furniture.
 {¶ 20} Deputy Olsen testified that he waited outside for approximately 15 minutes while the others remained inside. Olsen testified that he saw John Bailey and appellant carrying things out of the house, but he could not say what those items were. Deputy Olsen testified that he did not notice what was being removed by others from the house because he was upset about what he was told at the top of the stairs. Olsen said, "I was upset with what happened and uh, the position that I had been put in there."
 {¶ 21} The only guns collected and brought to the sheriff's department that evening were the four or five guns initially removed by Deputy Olsen. Olsen testified that he believed other guns left the house that evening with someone other than Deputy Jackson.
 {¶ 22} Sgt. Bivens testified that Deputy Jackson called him at one point and requested that he respond to the house because John Bailey was still "causing a problem." Sgt. Bivens said the request was withdrawn when Deputy Jackson indicated that everyone was leaving the home.
 {¶ 23} Deputy Olsen testified that John Bailey and his teenage son left the house with appellant around midnight, at the same time as Deputy Jackson was departing the scene. Deputy Olsen returned to the sheriff's department, and according to Sgt. Bivens, described *Page 6 
the condition of the house as "trashed."
 {¶ 24} Sgt. Bivens eventually responded to the house to observe the damage, after receiving a call from the father of the CPO petitioner. Photographs taken by Bivens around 1:30 a.m. and by other law enforcement personnel later that morning were admitted at trial.
 {¶ 25} Evidence was presented that several windows and glass doors in the house were broken, and the carpet, furniture, and some walls were damaged. Included in the exhibits were three photographs that depicted writing on the walls in the same paint strewn over other areas. The writing on the walls contained disparaging statements presumably directed to the CPO petitioner.
 {¶ 26} In addition to the CPO provisions previously mentioned, the protection order contained checked paragraphs ordering that John Bailey not abuse protected persons, and included not threatening, bothering, harassing, or annoying them. The order also directed John Bailey to not interfere with petitioner's right to occupy the premises. John Bailey was directed in the CPO to not to have any contact with persons protected by the CPO, and that contact included writing and communications by any other means.
 {¶ 27} The offense of obstructing official business, pursuant to R.C. 2921.31(A), provides that "[n]o person, without privilege to do so and with purpose to prevent, obstruct, or delay the performance by a public official of any authorized act within the public official's capacity, shall do any act that hampers or impedes a public official in the performance of the public official's lawful duties."[2]
 {¶ 28} The proper focus in a prosecution for obstructing official business is on the defendant's conduct, verbal or physical, and its effect on the public official's ability to perform *Page 7 
the official's lawful duties. State v. Neptune (Apr. 21, 2000), Athens App. No. 99CA25. The purpose with which a person does an act is determined from the manner in which it is done, the means used, and all the other facts and circumstances in evidence. State v. Puterbaugh
(2001), 142 Ohio App.3d 185, 189.
 {¶ 29} Appellant argues that she performed no act that hampered or impeded the deputies, that her intent was to assist by providing a ride for her brother, that her actions were reasonable and her opinions truthful, and that she was privileged to act as she did. We are not persuaded by appellant's arguments.
 {¶ 30} After viewing the evidence in the light most favorable to the prosecution, we find that any rational trier of fact could have found the essential elements of the crime of obstructing official business beyond a reasonable doubt.
 {¶ 31} Sufficient evidence was presented to show that appellant was acting without privilege to do so. There was sufficient evidence that appellant, acting with purpose to prevent, obstruct, or delay the performance by the law enforcement officers, hampered and impeded the deputies in the performance of their lawful duty to implement the CPO.
 {¶ 32} After applying the standard of review on a manifest weight of the evidence challenge, we cannot find from the evidence presented that the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction for obstructing official business must be reversed.
 {¶ 33} Appellant's first assignment of error is overruled.
 {¶ 34} Assignment of Error No. 2:
 {¶ 35} "APPELLANT'S CONVICTION PURSUANT TO R.C. § 2921 44(A) WAS SUPPORTED BY INSUFFICIENT EVIDENCE AND/OR WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
 {¶ 36} A law enforcement officer may be charged with dereliction of duty under *Page 8 
R.C. 2921.44(A)(2), if he or she negligently "fail[s] to prevent or halt the commission of an offense or to apprehend an offender, when it is in the law enforcement officer's power to do so alone or with available assistance."[3]
 {¶ 37} Under the first assignment of error, we delineated the standards of review for challenges to the sufficiency and manifest weight of the evidence. We previously outlined the evidence presented in the case.
 {¶ 38} Appellant argues under this assignment of error that the conviction for dereliction of duty was erroneous because she did not prevent the deputies from removing the guns. Appellant argues that there was no evidence that she knew her brother was violating the CPO or was otherwise committing a crime, that there was no evidence she knew the extent of the damage to the house, or that the damage she observed made the house uninhabitable. We find no merit to appellant's arguments.
 {¶ 39} After reviewing the evidence set forth for the offense of dereliction of duty in the light most favorable to the prosecution, we find that any rational jury could have found that appellant negligently failed to prevent or halt the commission of an offense related to the CPO or to arrest the offender when it was within her power to do so alone or with available assistance. We also do not find that the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction for dereliction of duty must be reversed.
 {¶ 40} Appellant's second assignment of error is overruled.
 {¶ 41} Assignment of Error No. 3:
 {¶ 42} "THE TRIAL COURT ERRED BY NOT RELEASING GRAND JURY TRANSCRIPTS TO THE DEFENSE COUNSEL AND BY NOT DISMISSING THE CASE." *Page 9 
 {¶ 43} Appellant argues under this assignment of error that the state improperly used her statement she gave during an internal affairs investigation and for which she received immunity. Based upon State v.Conrad and other cases, appellant argues that the trial court should have dismissed her indictment. See State v. Conrad (1990),50 Ohio St.3d 1 (where, in obtaining an indictment from a grand jury, the prosecution uses immunized testimony of a witness and where that right to immunity was not waived, any indictment issued against the witness as a result of such grand jury proceedings must be dismissed); see, also, Garrity v.State of New Jersey (1967), 385 U.S. 493, 87 S.Ct. 616.
 {¶ 44} The prosecution must satisfy a two-prong test where a claim is made that immunized testimony was used: (1) the government must deny any use of the accused's own immunized testimony against him or her in a criminal case; and (2) the government must affirmatively prove that all of the evidence to be used at trial is derived from sources wholly independent of immunized testimony. Conrad at 4, citing to Kastigar v.United States (1972), 406 U.S. 441, 460-62, 92 S.Ct. 1653.
 {¶ 45} The prosecution filed an affidavit averring that a statement given by appellant in the internal affairs investigation was not used against her in her criminal case and, further, that the statement was not relied upon in the prosecution of appellant, but only provided to comply with the criminal rules of discovery. See Crim. R. 16 (prosecutor must disclose statements of defendant that are available to, or within possession, custody, or control of the state, the existence of which is known or by exercise of due diligence may become known to prosecutor). The affidavit from the prosecutor also detailed the evidence used to secure the indictment and what the prosecution intended to use at trial.
 {¶ 46} The trial court overruled appellant's motion based upon the applicable case law and the prosecutor's affidavit that he did not rely on the immunized statement. We do not find that the trial court erred in that regard. See Crim. R. 12; see, generally, State v. Brocious, *Page 10 
Clark App. No. 2002CA89, 2003-Ohio-4708.
 {¶ 47} Appellant provides very little argument directed to her assertion that the trial court erred in failing to disclose grand jury testimony, other than to state that she requested disclosure pursuant to Crim. R. 6(E).
 {¶ 48} Grand jury proceedings are secret, and an accused is not entitled to inspect grand jury transcripts either before or during trial unless the ends of justice require it and the defense shows that a particularized need for disclosure exists that outweighs the need for secrecy. State v. Patterson (1971), 28 Ohio St.2d 181, paragraph three of the syllabus; Crim. R. 6(E).
 {¶ 49} We must presume that appellant's particularized need for disclosure, as she set forth with the trial court below, is related to the alleged use of the immunized statement before the grand jury.
 {¶ 50} The decision whether to release grand jury testimony is within the discretion of the trial court and will not be reversed absent an abuse of discretion. State v. Coley, 93 Ohio St.3d 253, 261,2001-Ohio-1340.
 {¶ 51} After reviewing the record, we cannot say the trial court abused its discretion when it denied appellant's motion for grand jury transcripts.
 {¶ 52} Appellant's third assignment of error is overruled.
 {¶ 53} Judgment affirmed.
BRESSLER and POWELL, JJ., concur.
[1] The spelling of the names of witnesses will be listed as provided in the trial transcript.
[2] "Privilege" means an immunity, license, or right conferred by law, bestowed by express or implied grant, arising out of status, position, office, or relationship, or growing out of necessity. R.C. 2901.01(A)(12). A person acts "purposely" when it is her specific intention to cause a certain result, or when the gist of the offense is a prohibition against conduct of a certain nature, regardless of what the offender intends to accomplish thereby, it is her specific intention to engage in conduct of that nature. R.C. 2901.22(A).
[3] "A person acts negligently when, because of a substantial lapse from due care, he fails to perceive or avoid a risk that his conduct may cause a certain result or may be of a certain nature. A person is negligent with respect to circumstances when, because of a substantial lapse from due care, he fails to perceive or avoid a risk that such circumstances may exist." R.C. 2901.22(D). *Page 1