[Cite as *State v. Alexander*, 2017-Ohio-5507.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

WARREN COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Plaintiff-Appellee, | : | CASE NO. CA2016-09-085 |
| | : | O P I N I O N |
| - vs - | | 6/26/2017 |
| | : | |
| JOHN ALEXANDER III, | : | |
| Defendant-Appellant. | : | |

CRIMINAL APPEAL FROM WARREN COUNTY COURT OF COMMON PLEAS
Case No. 16CR31825

David P. Fornshell, Warren County Prosecuting Attorney, Kirsten A. Brandt, 520 Justice Drive, Lebanon, Ohio 45036, for plaintiff-appellee

Engel & Martin, Mary K. Martin, 5181 Natorp Blvd., Suite 210, Mason, Ohio 45040, for defendant-appellant

**HENDRICKSON, P.J.**

{¶ 1} Defendant-appellant, John Alexander III, appeals from his conviction and sentence in the Warren County Court of Common Pleas for obstructing official business. For the reasons discussed below, we affirm his conviction and sentence.

{¶ 2} On March 21, 2016, appellant was indicted with assault on a corrections officer in violation of R.C. 2903.13(A), a felony of the third degree, and obstructing official business

in violation of R.C. 2921.31(A), a felony of the fifth degree. The charges arose out of an incident that occurred at the Warren Correctional Institution ("WCI") in Warren County, Ohio on December 19, 2015. On that date, appellant, an inmate, was being escorted to a segregation unit inside the prison by Corrections Officer (C.O.) James Jones, when appellant became loud, agitated, and uncooperative. An incident occurred between Jones and appellant, wherein appellant attempted to pull away from Jones' hold and knocked into Jones' shoulder. Jones took appellant to the ground, but appellant continued to struggle by flailing his head and legs while ignoring directives to "quit resisting" and to "calm down." Appellant was subdued only after multiple corrections officers held him to the ground, he received a couple of knee strikes to his thigh and torso area, and he was pepper sprayed.

{¶ 3} Appellant pled not guilty to the charges, and a one-day bench trial was held on September 22, 2016. The state presented testimony from three corrections officers and from Ohio State Highway Patrol Trooper Joshua Baker, who investigated the incident.

{¶ 4} C.O. Jones testified that on December 19, 2015, he was the acting lieutenant at the correctional facility. He explained that there had been a "signal three man down alarm" in 3B, a general population pod, and that the incident involved "Inmate Clark" and a corrections officer. After this incident was resolved, Jones was asked by a corrections officer to take appellant to the segregation unit. Appellant was handcuffed at this time.

{¶ 5} Jones put his hand on appellant's bicep and began escorting him to the segregation unit. As they walked, they encountered Inmate Clark. Appellant "became agitated" and was trying to communicate with Clark by shouting across the yard. Appellant attempted to walk in Clark's direction and Jones tried to "forcefully make him walk in a different direction." Jones gave appellant directives to "to walk where [he] was trying to direct him," to "calm down," to "be quiet," to "cease yelling across the yard" and "to start following [his] escort." Appellant did not follow these directives, but rather became more agitated.

- 2 -

Appellant tried to pull away from Jones and he "abruptly changed direction and ran into [Jones] with his shoulder." Jones, fearing that he was going to lose his balance and control of appellant, used a balance displacement technique to place appellant on the ground. Appellant landed on the ground face first.

{¶ 6} Jones explained that once appellant was on the ground, "[h]e became even more combative." Appellant started to flail his head back and forth, trying to head-butt Jones and other officers that had responded to help Jones. Appellant also began kicking his feet at the corrections officers. Jones explained that using the "quadrant control technique" he and four or five other officers attempted to subdue appellant by holding down different areas, or quadrants, of his body. Appellant remained combative so Jones delivered "a couple knee strikes to his large muscle groups, like his thigh and torso area." When that did not work to subdue appellant, Correctional Captain Mitchell Vance sprayed appellant's facial area with pepper spray. After appellant finally stopped struggling and started obeying Jones' orders, he was escorted to the medical unit. Jones estimated that the incident "lasted for a good minute and a half [to] two minutes." Jones testified he was "very slightly" injured by the incident, as he had "some abrasions" on his knees.

{¶ 7} C.O. Allen Fisher testified that he noticed appellant was "very agitated" as Jones was escorting him to segregation. Fisher went to assist Jones with the escort. Appellant pulled away from Fisher's hand and ran into Jones with his shoulder. After Jones took appellant to the ground, Fisher attempted to help get appellant back under control, but appellant was "very agitated" and was "rolling around kicking * * * trying to get away." Appellant ignored Fisher's directives to "calm down [and] quit resisting." According to Fisher, appellant only calmed down and starting obeying directives after Jones delivered some knee strikes to his midsection and Vance sprayed him with pepper spray.

{¶ 8} Vance provided testimony corroborating Fisher's and Jones' accounts of the

- 3 -

incident. He stated that appellant was "loud and agitated" as he was being escorted to segregation. After Jones took him to the ground, appellant was "kicking and rolling around." After Vance sprayed the pepper spray in appellant's facial region, appellant began to calm down and started complying with the officers' directives.

{¶ 9} Appellant testified on his own behalf at trial. He explained that he was incarcerated at WCI due to felony convictions for receiving stolen property and attempted failure to comply. On the date of the incident, he and some other inmates were returning to their pod after eating when he saw Inmate Clark and a corrections officer get into an argument over certain food items found on Clark's person. The argument escalated into a physical confrontation and Clark was struck by a corrections officer and pepper sprayed. Appellant testified that although he was not a participant in this particular incident, he was "upset" by what he had observed. He began to yell at various corrections officers that what they were doing to Clark was wrong and was "B.S." As a result of his yelling, appellant was placed in handcuffs.

{¶ 10} Appellant testified that while being escorted by C.O. Jones towards the segregation unit, he saw Clark being escorted by other officers. According to appellant, he yelled at Clark "don't worry, I seen everything that happened. I'm going to write them up." Appellant denied that he ever bumped into Jones' shoulder or that he intended to fight or resist Jones. He testified that Jones took him to the ground in retaliation for his support of Clark. Appellant stated "Jones looked over at me, he's like 'oh, you want to talk shit, tough guy.'" Appellant claimed Jones encouraged him to resist, but appellant did not because he did not want to give Jones a reason to use force. Appellant claims that Jones took him to the ground after appellant laughed at him. Appellant testified that once on the ground he was harmed by Jones' and other corrections officers' actions. He testified that both of his eyes swelled shut, his genital area swelled and turned black and blue, and he obtained lacerations

and knots all over the back of his head.

{¶ 11} After presenting his own testimony, appellant rested his defense. Following closing arguments, the court found appellant not guilty of assault on a corrections officer, stating "there was insufficient evidence to prove beyond a reasonable doubt that Mr. Alexander caused or attempted to cause physical harm to another." However, the court found appellant guilty of obstructing official business as charged, stating "the [s]tate has proven beyond a reasonable doubt that Mr. Alexander did prevent, obstruct, or delay the performance of a public official in their authorized acts." Appellant was sentenced to nine months in prison, and the sentence was run consecutively to a previously imposed prison term.

{¶ 12} Appellant appealed his conviction and sentence, raising two assignments of error.

{¶ 13} Assignment of Error No. 1:

{¶ 14} THE VERDICT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND WAS NOT SUPPORTED BY SUFFICIENT EVIDENCE.

{¶ 15} In his first assignment of error, appellant argues his conviction for obstructing official business is not supported by sufficient evidence and is against the manifest weight of the evidence. Specifically, appellant argues that the state failed to produce evidence that he acted with the purpose of preventing, delaying, or obstructing the corrections officer's performance of an authorized act. He further argues that any delay was "de minimis in nature" and did not rise to the level of obstruction.

{¶ 16} Whether the evidence presented at trial is legally sufficient to sustain a verdict is a question of law. *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997); *State v. Grinstead*, 194 Ohio App.3d 755, 2011-Ohio-3018, ¶ 10 (12th Dist.). When reviewing the sufficiency of the evidence underlying a criminal conviction, an appellate court examines the evidence in

order to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. *State v. Paul*, 12th Dist. Fayette No. CA2011-10-026, 2012-Ohio-3205, ¶ 9. Therefore, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus.

{¶ 17} A manifest weight of the evidence challenge, on the other hand, examines the "inclination of the greater amount of credible evidence, offered at a trial, to support one side of the issue rather than the other." *State v. Barnett*, 12th Dist. Butler No. CA2011-09-177, 2012-Ohio-2372, ¶ 14. To determine whether a conviction is against the manifest weight of the evidence, the reviewing court must look at the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether in resolving the conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *State v. Graham*, 12th Dist. Warren No. CA2008-07-095, 2009-Ohio-2814, ¶ 66. "While appellate review includes the responsibility to consider the credibility of witnesses and weight given to the evidence, 'these issues are primarily matters for the trier of fact to decide.'" *State v. Barnes*, 12th Dist. Brown No. CA2010-06-009, 2011-Ohio-5226, ¶ 81, quoting *State v. Walker*, 12th Dist. Butler No. CA2006-04-085, 2007-Ohio-911, ¶ 26. An appellate court, therefore, will overturn a conviction due to the manifest weight of the evidence only in extraordinary circumstances when the evidence presented at trial weighs heavily in favor of acquittal. *Id.*, citing *Thompkins*, 78 Ohio St.3d at 387.

{¶ 18} Although the legal concepts of sufficiency of the evidence and weight of the evidence are both quantitatively and qualitatively different, "[a] determination that a conviction is supported by the manifest weight of the evidence will also be dispositive of the issue of

sufficiency." *State v. Jones*, 12th Dist. Butler No. CA2012-03-049, 2013-Ohio-150, ¶ 19. *See also State v. Hart*, 12th Dist. Brown No. CA2011-03-008, 2012-Ohio-1896, ¶ 43 ("a finding that a conviction is supported by the weight of the evidence must necessarily include a finding of sufficiency").

{¶ 19} Appellant was convicted of obstructing official business in violation of R.C. 2921.31(A), which provides that "[n]o person, without privilege to do so and with purpose to prevent, obstruct, or delay the performance by a public official of any authorized act within the public official's official capacity, shall do any act that hampers or impedes a public official in the performance of the public official's lawful duties." Where a defendant's actions create "a risk of physical harm to any person, obstructing official business is a felony of the fifth degree." R.C. 2921.31(B).

{¶ 20} "The proper focus in a prosecution for obstructing official business is on the defendant's conduct, verbal or physical, and its effect on the public official's ability to perform his lawful duties." *State v. Standifer*, 12th Dist. Warren No. CA2011-07-071, 2012-Ohio-3132, ¶ 28, citing *State v. Bailey*, 12th Dist. Fayette No. CA2007-04-013, 2008-Ohio-3075, ¶ 28. "A person acts purposely when it is the person's specific intention to cause a certain result, or, when the gist of the offense is a prohibition against conduct of a certain nature, regardless of what the offender intends to accomplish thereby, it is the offender's specific intention to engage in conduct of that nature." R.C. 2901.22(A). "The purpose with which a person does an act is determined from the manner in which it is done, the means used, and all the other facts and circumstances in evidence." *Bailey* at ¶ 28.

{¶ 21} To convict a defendant of obstructing official business, the state does not need to prove that the defendant successfully prevented an officer from performing his or her official duties; rather, the state need only introduce evidence demonstrating the defendant "actually interfered with the performance of an official duty and made it more difficult."

*Standifer* at ¶ 28. This court has previously found that "moving away from officers, subjecting officers to verbal abuse, and physically resisting officers was sufficient to convict a defendant of obstructing official business." *State v. Florence*, 12th Dist. Butler No. CA2013-08-148, 2014-Ohio-2337, ¶ 12, citing *State v. Merz*, 12th Dist. Butler No. CA97-05-108, 2000 Ohio App. LEXIS 3414, *6-7 (July 31, 2000).

{¶ 22} After reviewing the record, weighing inferences and examining the credibility of the witnesses, we find that appellant's conviction for obstructing official business is supported by sufficient evidence and is not against the weight of the evidence. The state presented testimony and evidence from which the trial court could have found all the essential elements of the offense proven beyond a reasonable doubt. The state introduced evidence that appellant purposefully obstructed C.O. Jones' escort of his person to the segregation unit and made the performance of Jones' duties more difficult. Appellant was instructed to "be quiet" and to quit yelling across the yard to Inmate Clark while he was being taken to the segregation unit. Appellant not only ignored these commands, but he also resisted Jones' escort by pulling away from Jones, changing his direction, and running into Jones with his shoulder. Jones was unable to escort appellant to segregation. Instead, Jones had to place appellant on the ground and try to subdue appellant while avoiding appellant's kicking legs and attempts to head-butt him. While on the ground, appellant continued to ignore Jones' and other corrections officers' orders to calm down and quit resisting. Knee strikes, pepper spray, and a quadrant control technique all had to be used before appellant stopped struggling and began obeying Jones' orders. Once he was subdued, appellant was taken to the medical unit rather than to segregation. Contrary to appellant's assertions, his conduct caused more than a mere "minor delay, annoyance, irritation or inconvenience" in the performance of Jones' escort duty. The facts surrounding appellant's actions demonstrate he acted purposefully in obstructing and delaying C.O. Jones from performing his duty.

{¶ 23} In finding appellant guilty of obstructing official business, the trial court was entitled to discredit appellant's testimony that he did not bump into Jones' shoulder or resist Jones' escort. "The decision whether, and to what extent, to credit the testimony of particular witnesses is within the peculiar competence of the factfinder, who has seen and heard the witness." *State v. Rhines*, 2d Dist. Montgomery No. 23486, 2010-Ohio-3117, ¶ 39. "[W]hen conflicting evidence is presented at trial, a conviction is not against the manifest weight of the evidence simply because the trier of fact believed the prosecution testimony." *State v. Lunsford*, 12th Dist. Brown No. CA2010-10-021, 2011-Ohio-6529, ¶ 17.

{¶ 24} Accordingly, we find that appellant's conviction for obstructing official business is not against the manifest weight of the evidence and is supported by sufficient evidence. Appellant's first assignment of error is overruled.

{¶ 25} Assignment of Error No. 2:

{¶ 26} THE TRIAL COURT IMPROPERLY SENTENCED APPELLANT TO NINE MONTHS IN PRISON WITHOUT THE REQUISITE FINDINGS.

{¶ 27} In his second assignment of error, appellant argues the trial court did not find beyond a reasonable doubt that his acts "create[d] a risk of physical harm to any person," in accordance with R.C. 2921.31(B). He contends that without such a finding, he could only be convicted of a second-degree misdemeanor and sentenced to a maximum of 90 days in jail. In support of his argument that the trial court did not find that he "create[d] a risk of physical harm to any person," he relies on the following statement by the trial court:

> TRIAL COURT: I find that the [s]tate has proven beyond a reasonable doubt that Mr. Alexander did prevent, obstruct, or delay the performance of a public official in their authorized acts and find him guilty of obstructing official business. But, I feel that the [s]tate from the testimony of the [s]tate's witnesses there was *insufficient evidence to prove beyond a reasonable doubt that Mr. Alexander caused or attempted to cause physical harm to another*, therefore, I find him not guilty of assault.

(Emphasis added.)

{¶ 28} Pursuant to R.C. 2945.75(A),

> When the presence of one or more additional elements makes an offense one of more serious degree:
>
> (1) The affidavit, complaint, indictment, or information either shall state the degree of the offense which the accused is alleged to have committed, or shall allege such additional element or elements. Otherwise such affidavit, complaint, indictment, or information is effective to charge only the least degree of the offense.
>
> (2) A guilty verdict shall state either the degree of the offense of which the offender is found guilty, or that such additional element or elements are present. Otherwise, a guilty verdict constitutes a finding of guilty of the least degree of the offense charged.

Therefore, a verdict form must include "either the degree of the offense of which the defendant is convicted or a statement that an aggravating element has been found to justify convicting a defendant of a greater degree of a criminal offense." *State v. Pelfrey*, 112 Ohio St.3d 422, 2007-Ohio-256, ¶ 14. *See also State v. Darazim*, 10th Dist. Franklin No. 14AP-203, 2014-Ohio-5304, ¶ 40-45 (applying R.C. 2945.75 to a bench trial).

{¶ 29} The record reveals that the indictment charged appellant with obstructing official business, "said offense a Felony of the 5th degree, contrary to and in violation of Section 2921.31(A) of the Ohio Revised Code." At the conclusion of the bench trial, the trial court specifically stated, "Mr. Alexander, you have been found guilty of obstructing official business, a felony of the fifth degree." The court's September 23, 2016 Entry further provided:

> This cause came on for a Trial to the Bench on September 22, 2016. Defendant was represented by [counsel]. After hearing the evidence and arguments of counsel, the Court returned a verdict of GUILTY as charged in the Indictment being <u>Count Two: Obstructing Official Business, in violation of 2921.31(A) of the Ohio Revised Code, a Felony of the 5th Degree and Not Guilty as to Count One: Assault, in violation of 2903.13(A) of the Ohio Revised Code, a Felony of the 3rd Degree</u>.

- 10 -

(Emphasis sic.)  Similarly, the Judgment Entry of Sentence provides that appellant was found guilty of "COUNT 2:  OBSTRUCTING OFFICIAL BUSINESS, R.C. 2921.31(A), A FELONY OF THE FIFTH DEGREE."  (Emphasis sic.)

{¶ 30}  As the indictment charged appellant with committing a felony of the fifth degree and the trial court returned a verdict of guilty "as charged in the indictment," we find no merit to appellant's assigned error.  *See, e.g., Darazim* at ¶ 40-45.  By finding appellant guilty of a fifth-degree felony as charged in the indictment, the court found beyond a reasonable doubt that appellant "create[d] a risk of physical harm to any person."

{¶ 31}  We further find no merit to appellant's argument that the trial court's finding that appellant's actions "create[d] a risk of physical harm to any person" resulted in an inconsistent verdict given the court's not guilty verdict on the assault charge.  "The several counts in a multi-count indictment are not interdependent and an inconsistent verdict only arises out of inconsistent responses to the same count."  *State v. Rice*, 12th Dist. Butler No. CA2000-02-025, 2001 Ohio App. LEXIS 1408, * 14-15 (Mar. 26, 2001), citing *State v. Brown*, 12 Ohio St.3d 147 (1984), syllabus.  *See also State v. Henderson*, 1st Dist. Hamilton No. C-130541, 2014-Ohio-3829, ¶ 24-25.  We have previously stated that "we do not believe the verdict of not guilty on [an] assault charge and guilty on [an] obstructing charge are necessarily inconsistent."  *State v. Whitt*, 12th Dist. Butler No. CA89-06-091, 1990 Ohio App. LEXIS 2479, * 6 (June 18, 1990).  One may create a risk of physical harm without actually causing physical harm or attempting to cause physical harm to another.  Here, the state presented evidence that appellant's resistance to his escort and his combative nature created a risk of physical harm to C.O. Jones and to the other corrections officers who assisted in regaining control of appellant on the date of the incident.

{¶ 32}  Accordingly, as appellant was properly convicted of fifth-degree obstructing

official business, the imposition of a nine-month prison term was proper pursuant to R.C.

2929.14(A)(5). Appellant's second assignment of error is overruled.

{¶ 33} Judgment affirmed.

RINGLAND and M. POWELL, JJ., concur.