[Cite as *In re K.J.C.*, 2024-Ohio-4527.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

CLERMONT COUNTY

IN RE: :

    K.J.C. : CASE NO. CA2024-02-007

: O P I N I O N
9/16/2024

:

:

:

CRIMINAL APPEAL FROM CLERMONT COUNTY COURT OF COMMON PLEAS
JUVENILE DIVISION
Case No. 2023 JA 57437(Ct.#1)

Mark J. Tekulve, Clermont County Prosecuting Attorney, and Nick Horton, Assistant Prosecuting Attorney, for appellee.

Nicholas D. Graman, for appellant.

**BYRNE, P.J.**

{¶ 1} A minor, "Kenneth," appeals from his adjudication as a delinquent child for conduct that would have constituted the offense of obstructing official business if

committed as an adult.[1]  For the reasons discussed below, we affirm the adjudication.

## I. Factual and Procedural Background

{¶ 2}   In August 2023, Loveland Police Officer Michael Wright filed a complaint in the Clermont County Court of Common Pleas, Juvenile Division, alleging that Kenneth was a delinquent child for having obstructed official business in violation of R.C. 2921.31(A) and criminal trespassing in violation of R.C. 2911.21(A)(3).  The charges stemmed from an incident in which a group of unruly juveniles were causing problems at a local park.  Kenneth was among these juveniles.  While Officer Wright was attempting to arrest a different juvenile, Kenneth stepped towards Officer Wright and touched him, apparently attempting to turn off the officer's body-worn camera.  The matter proceeded to an adjudicatory hearing, at which Officer Wright and Kenneth both testified.

## A. Officer Michael Wright's Testimony

{¶ 3}   Officer Michael Wright testified that he was a patrol officer with the Loveland Police Department.  On August 1, 2023, at approximately 4:30 p.m., he responded to a call at Nisbet Park.  The call indicated that a large group of juveniles were gathered at the park and behaving badly, drinking alcohol, screaming, and fighting.  Officer Wright went to the park to contact this group and issue trespass warnings to any individuals who would not leave the park willingly.

{¶ 4}   When Officer Wright arrived at the park, he observed a group of approximately 30 juveniles.  He asked them to disperse.  Some did, but some did not.  He then began filling out trespass citations for certain juveniles.

{¶ 5}   While he was filling out the trespass paperwork, one juvenile ("Carter")

---

1. "Kenneth" is a pseudonym, used in this opinion for purposes of protecting the juvenile's identity as well as improving the readability of the opinion.  *See In re D.P.*, 2022-Ohio-4553, ¶ 1, fn. 1 (12th Dist.); *The Supreme Court of Ohio Writing Manual*, § 16, at 115 (3d Ed. 2024).  We also refer to the other minor involved in this case with a pseudonym.

began acting belligerently and threatened to harm police officers. As Officer Wright was attempting to arrest Carter, Kenneth approached Officer Wright from behind. Officer Wright turned around and noted that Kenneth was very close to him, so Officer Wright used his arm to push Kenneth back. Another officer who was on scene subsequently informed Officer Wright that when Kenneth approached Officer Wright, Kenneth had attempted to disengage Officer Wright's body-worn camera.

{¶ 6} The state played the video from Officer Wright's body-worn camera. In it, Officer Wright is talking to a group of juveniles in a park shelter. At some point, Carter appears and begins aggressively interacting with the police officers, calling them names. Officer Wright tells Carter to step back and he does so. Carter then threatens to assault Officer Wright. Officer Wright then approaches Carter to arrest him. Carter resists arrests and another officer steps in to help Officer Wright secure Carter in handcuffs.

{¶ 7} Officer Wright then steps back from Carter and the other officer, who is still struggling to gain control of Carter. Officer Wright testified that when he stepped back, he was retrieving pepper spray, which he intended to use if needed to facilitate Carter's arrest. At the time he steps back, Kenneth is depicted in the video walking around a low wall in the shelter and approaching Officer Wright. Kenneth then reaches towards Officer Wright's body and appears to touch the body-worn camera. Officer Wright then pushes Kenneth away from him. After the push, Kenneth attempts to lunge back towards Officer Wright, but a juvenile female steps in and separates Kenneth from Officer Wright.

{¶ 8} Officer Wright testified that he was later made aware of a separate incident with Carter that occurred earlier, on July 4. During that incident, Carter was sprayed with bear spray, had an allergic reaction, and was hospitalized for several days.

**B. Kenneth's Testimony**

{¶ 9} Kenneth testified that he walked over to Officer Wright when he saw Officer

Wright holding pepper spray. He claimed that he did not want Carter to go to the hospital again, so he walked over and tried to stop Officer Wright from pepper spraying Carter. He stated that he "just walked over and I touched his arm." Kenneth claimed that he did not intend to turn off Officer Wright's body-worn camera and did not even realize that he touched it. On cross-examination, Kenneth admitted that he never verbally told Officer Wright that Carter was allergic to pepper spray.

### C. The Juvenile Court's Decision

{¶ 10} The juvenile court dismissed the trespassing charge, concluding that Officer Wright had not yet warned Kenneth that he was criminally trespassed from the park. But the court found Kenneth delinquent for obstructing official business. The court explained its finding as follows:

> In this particular case, it is clear in the video as well as from the testimony of the witnesses, that [Kenneth] took a step forward and went beyond what I think he should have done and that was attempting to prevent Officer Wright from assisting this other officer in the arrest of [Carter]. It's obvious from the video that he took his finger, he was trying, it would appear to me to either go towards the camera or at least to the some respects [sic], almost obstructing the ability of the officer to move forward, without privilege to do so with purpose to prevent, obstruct or delay the performance by public officials, didn't authorize that.
>
> . . .
>
> It is apparent to me in this particular case, that even though [Kenneth] says that he was concerned about the use of pepper spray against [Carter], his response was inappropriate. What should have happened, is he should have made a statement, don't use pepper spray. He's allergic to it, he was in the hospital. But he didn't do that. He, on the other hand, took an affirmative act in trying to prevent the arrest of that other individual by doing what he did. He had no right to do that.

{¶ 11} The juvenile court placed Kenneth on community control for one year, imposed eight hours of community service, and ordered Kenneth to write an apology letter

to Officer Wright. Kenneth appealed, raising one assignment of error.

## II. Law and Analysis

{¶ 12} Kenneth's sole assignment of error states:

THE TRIAL COURT ERRED WHEN IT ADJUDICATED APPELLANT DELINQUENT AS THE ADJUDICATION WAS BASED ON INSUFFICIENT EVIDENCE AND AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶ 13} Kenneth argues that the adjudication of delinquency was not supported by sufficient evidence and was against the manifest weight of the evidence based on the state failing to present evidence that he committed any act that hampered or impeded Officer Wright in the performance of his lawful duties. Kenneth argues that there is no evidence that he "actually interfered" with Officer Wright because Officer Wright was unaware that Kenneth had attempted to turn off his body-worn camera. Kenneth also points to the fact that the camera was never actually turned off. Kenneth argues that his act of unsuccessfully attempting to turn off the body-worn camera did not interfere with the performance of Officer Wright's official duties.

### A. Applicable Law

{¶ 14} In reviewing whether a juvenile's delinquency adjudication is supported by sufficient evidence and the manifest weight of the evidence, the standard of review is the same as the standard used in adult criminal cases. *In re B.T.B.*, 2015-Ohio-2729, ¶ 16 (12th Dist.).

{¶ 15} When reviewing the sufficiency of the evidence underlying a conviction (or, in this case, an adjudication of delinquency), an appellate court examines the evidence to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. *State v. Paul*, 2012-Ohio-3205, ¶ 9 (12th Dist.). Therefore, "[t]he relevant inquiry is whether, after viewing the evidence in a light

most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus.

{¶ 16} A manifest weight of the evidence challenge examines the "inclination of the greater amount of credible evidence, offered at a trial, to support one side of the issue rather than the other." *State v. Barnett*, 2012-Ohio-2372, ¶ 14 (12th Dist.). To determine whether a conviction (or, in this case, an adjudication of delinquency) is against the manifest weight of the evidence, the reviewing court must look at the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether in resolving the conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction (or, here, adjudication) must be reversed, and a new trial ordered. *State v. Graham*, 2009-Ohio-2814, ¶ 66 (12th Dist.).

{¶ 17} In reviewing the evidence, an appellate court must be mindful that the original trier of fact was in the best position to judge the credibility of witnesses and determine the weight to be given to the evidence. *State v. Blankenburg*, 2012-Ohio-1289, ¶ 114 (12th Dist.). An appellate court will overturn a conviction due to the manifest weight of the evidence only in the exceptional case in which the evidence weighs heavily against the conviction. *State v. Zitney*, 2021-Ohio-466, ¶ 15 (12th Dist.).

{¶ 18} "Although the legal concepts of sufficiency of the evidence and weight of the evidence are both quantitatively and qualitatively different, '[a] determination that a conviction is supported by the manifest weight of the evidence will also be dispositive of the issue of sufficiency.'" *State v. Billingsley*, 2020-Ohio-2673, ¶ 15 (12th Dist.), quoting *State v. Jones*, 2013-Ohio-150, ¶ 19 (12th Dist.).

**B. Analysis**

{¶ 19} The juvenile court adjudicated Kenneth delinquent for acts that if committed by an adult would have constituted obstructing official business in violation of R.C. 2921.31(A). That statute provides:

> No person, without privilege to do so and with purpose to prevent, obstruct, or delay the performance by a public official of any authorized act within the public official's official capacity, shall do any act that hampers or impedes a public official in the performance of the public official's lawful duties.

{¶ 20} As such, the state must prove five elements to establish the offense of obstructing official business: "'(1) an act by the defendant; (2) done with the purpose to prevent, obstruct, or delay a public official; (3) that actually hampers or impedes a public official; [(4)] while the official is acting in the performance of a lawful duty; and (5) the defendant does so act without a privilege to do so.'" *State v. Devillere*, 2010-Ohio-2538, ¶ 20 (12th Dist.), quoting *State v. Dice*, 2005-Ohio-2505, ¶ 19 (3d Dist.).

{¶ 21} Kenneth only challenges the third element discussed above, i.e., actual hampering or impeding of a public official. With regard to this third element, we have held that, "the state does not need to prove that the defendant successfully prevented an officer from performing his or her official duties; rather, the state need only introduce evidence demonstrating the defendant 'actually interfered with the performance of an official duty and made it more difficult.'" *State v. Alexander*, 2017-Ohio-5507, ¶ 21 (12th Dist.), quoting *State v. Standifer*, 2012-Ohio-3132, ¶ 28 (12th Dist.). We have previously concluded that conduct as varied as "moving away from officers, subjecting officers to verbal abuse, and physically resisting officers was sufficient to convict a defendant of obstructing official business." *State v. Florence*, 2014-Ohio-2337, ¶ 12 (12th Dist.).

{¶ 22} Upon review, we find that the state presented sufficient evidence to demonstrate that Kenneth "actually interfered" with the performance of Officer Wright's official duties and made those duties more difficult. Officer Wright testified that as he was

attempting to arrest Carter, Kenneth came up behind him and was standing very close to him. As a result, he had to push Kenneth away with his arm.

{¶ 23} The video from Officer Wright's body-worn camera corroborates this account. It shows Kenneth approach and touch Officer Wright while Officer Wright is attempting to arrest Carter, who is actively resisting arrest. Officer Wright had to physically turn away from the arrest and push Kenneth away. After being pushed away, Kenneth continued to lunge towards Officer Wright until a juvenile female stood in Kenneth's way and held him back. Kenneth's act of approaching Officer Wright and touching him momentarily distracted Officer Wright from the performance of the official duty he was engaged in (arresting Carter) and made the performance of that duty more difficult. *Alexander* at ¶ 21. This is evident because the other officer still did not have Carter under control until Officer Wright returned to his duties and finished assisting the other officer with securing Carter.

{¶ 24} Kenneth argues that there was no evidence that he actually interfered with Officer Wright's official duties because (1) he was not successful in turning off the body-worn camera, and (2) Officer Wright did not know he attempted to turn off the camera at the time. Both arguments are beside the point.

{¶ 25} Whether Wright was also attempting to turn off the camera when he touched Officer Wright has no bearing on the fact that he approached and touched Officer Wright while Officer Wright was attempting to effectuate an arrest and distracted Officer Wright from that duty. And whether Officer Wright was aware of Kenneth's intentions in touching him is also irrelevant. What Officer Wright understood was that Kenneth was too close for him to safely conduct his public duties and required him to stop pursuing those duties and to push Kenneth away from him.

{¶ 26} Kenneth claimed in his brief and at oral argument that the only basis that

the trial court found for finding that Kenneth obstructed official business was that he attempted to interfere with Officer Wright's body-worn camera. However, the record belies this argument. As discussed above, the trial court's decision only briefly referenced Kenneth touching the body-worn camera, and only in the context of explaining what Kenneth did to prompt Officer Wright to push him away. Kenneth approaching and touching Officer Wright was the act that actually interfered with the performance of Officer Wright's duties, and it is immaterial whether Kenneth touched the camera or some other part of Officer Wright's uniform.

{¶ 27} Kenneth makes no other argument in support of his contention that his adjudication for obstructing official business was not supported by sufficient evidence and that it was against the greater weight of the evidence. Having reviewed the evidence, we find that Kenneth's adjudication was supported by sufficient evidence and the weight of the evidence. *State v. Hebdon*, 2013-Ohio-1729, ¶ 39 (12th Dist.). In fact, Kenneth's adjudication was supported by overwhelming evidence.

### III. Conclusion

{¶ 28} The state demonstrated that Kenneth actually interfered with the performance of Officer Wright's official duties. The adjudication was supported by sufficient evidence and the greater weight of the evidence. We overrule Kenneth's sole assignment of error.

{¶ 29} Judgment affirmed.


HENDRICKSON and M. POWELL, JJ., concur.