[Cite as *In re M.P.A.S.*, 2025-Ohio-700.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

WARREN COUNTY

|  |  |  |
|---|---|---|
| IN RE: | : | |
| M.P.A.S. | : | CASE NO. CA2024-10-066 |
| | : | O P I N I O N<br>3/3/2025 |
| | : | |
| | : | |
| | : | |

APPEAL FROM WARREN COUNTY COURT OF COMMON PLEAS
JUVENILE DIVISION
Case No. 24-N000027

David P. Fornshell, Warren County Prosecuting Attorney, and Kirsten A. Brandt and John G. Rye IV, Assistant Prosecuting Attorneys, for appellee.

Mark W. Raines, for appellant

**POWELL, J.**

{¶ 1} Appellant, M.P.A.S., appeals a decision of the Warren County Court of Common Pleas, Juvenile Division, adjudicating her a delinquent child for conduct that would have constituted the offense of receiving stolen property if committed as an adult.

{¶ 2} On January 22, 2024, a complaint was filed in the juvenile court alleging

appellant was a delinquent child for receiving stolen property in violation of R.C. 2913.51(A), a fourth-degree felony. The charge stemmed from an incident in which appellant was a passenger in a stolen vehicle that was involved in a high-speed chase with police. Appellant denied the charge and the matter proceeded to an adjudicatory hearing before a magistrate on June 17, 2024. Montez Mason Warren, the adult individual who stole the vehicle, and two state troopers testified on behalf of the state. Appellant did not testify or present witnesses on her behalf.

{¶ 3} Warren testified that he was residing in Columbus, Ohio in January 2024 and that he had known appellant for a couple of months. Warren would see appellant at Star House, a community youth center, or the library. Warren always walked to both places because they were within walking distance from his home. In the early morning hours of January 22, 2024, Warren was walking on High Street in Columbus when he noticed a parked 2017 Honda Accord with the doors unlocked and the engine running. Warren got in the Honda and drove away. Warren drove by Star House where he saw appellant and another juvenile female he knew ("T.C."). Warren asked them to come with him on a trip down the highway. Appellant and T.C. agreed and got in the car. After picking up a third individual ("Taquan"), Warren drove to Cincinnati.

{¶ 4} After spending two hours in Cincinnati, Warren began the return trip to Columbus on northbound I-71, driving well over the speed limit. Warren's speed attracted the attention of a state trooper who activated his overhead lights and attempted to affect a traffic stop. However, Warren declined to pull over and accelerated because "I was not trying to get caught in a stolen car." The pursuit lasted an hour with Warren driving at times at 140 m.p.h. During the high-speed chase, all four individuals in the car were panicking. Warren testified he was panicking because he did not want to get caught. Warren testified that appellant was panicking and that she kept saying that she did not

want to go to jail. The pursuit ended when Warren exited I-71 and ultimately crashed the Honda on State Route 72. Warren, T.C., and Taquan exited the vehicle and fled the scene. Appellant remained seated in the Honda.

{¶ 5} The magistrate found that appellant committed the offense of receiving stolen property and consequently adjudicated her a delinquent child. Appellant filed objections to the magistrate's decision, arguing that the state failed to prove she knew or had reasonable cause to believe the Honda was stolen. On October 9, 2024, the juvenile court overruled appellant's objections and adopted the magistrate's decision. In doing so, the juvenile court noted that Warren did not own a car, only had access to his grandmother's Ford Escape, and did not have a driver's license, and that the only common concern among the four individuals in the car was panic over being caught: "Here, the panic articulated during the chase is persuasive to the Court. Mr. Warren's testimony was not of [appellant's] pleas to pull over to terminate a deadly pursuit, nor were her pleas to be released safely on the side of the road. Her concern was for herself, not to be incarcerated. Out of the abundance of the heart, the mouth speaks."

{¶ 6} Appellant now appeals, raising two assignments of error.

{¶ 7} Assignment of Error No. 1:

{¶ 8} THE TRIAL COURT ERRED WHEN IT FOUND APPELLANT A DELINQUENT CHILD BY COMMITTING THE OFFENSE OF RECEIVING STOLEN PROPERTY AS THE STATE DID NOT PRODUCE SUFFICIENT EVIDENCE PROVING APPELLANT KNEW THE CAR WAS STOLEN AND HAD NO REASON TO KNOW THE CAR WAS STOLEN.

{¶ 9} Appellant argues that her delinquency adjudication for receiving stolen property is not supported by sufficient evidence because the state failed to show she knew or had reasonable cause to believe the Honda was stolen.

{¶ 10} In reviewing whether a juvenile's delinquency adjudication is supported by sufficient evidence, an appellate court applies the same standard of review used in adult criminal cases. *In re K.J.C.*, 2024-Ohio-4527, ¶ 14 (12th Dist.).

{¶ 11} When reviewing the sufficiency of the evidence underlying a criminal conviction, an appellate court examines the evidence in order to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. *State v. Peyton*, 2017-Ohio-243, ¶ 41 (12th Dist.). The "relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Id.* In other words, the test for sufficiency requires a determination as to whether the state has met its burden of production at trial. *State v. Wilson*, 2007-Ohio-2298, ¶ 34 (12th Dist.). "In a sufficiency-of-the-evidence review, an appellate court does not engage in a determination of witness credibility; rather, it essentially assumes the state's witnesses testified truthfully and determines whether or not that testimony satisfies each element of the crime." *State v. Johnson*, 2007-Ohio-2385, ¶ 8 (10th Dist.).

{¶ 12} To establish a violation of R.C. 2913.51 for receiving stolen property, the state must prove that the defendant received, retained, or disposed of the property of another, while knowing or having reasonable cause to believe the property was obtained through the commission of a theft offense. *State v. Rivera*, 2013-Ohio-3203, ¶ 9 (12th Dist.). R.C. 2901.22(B) provides that "[a] person has knowledge of circumstances when the person is aware that such circumstances probably exist." "When knowledge of the existence of a particular fact is an element of an offense, such knowledge is established if a person subjectively believes that there is a high probability of its existence and fails to make inquiry or acts with a conscious purpose to avoid learning the fact." *Id.* Absent

- 4 -

an admission by a defendant, the question of whether the defendant had reasonable cause to believe an item was stolen can only be proved by circumstantial evidence. *Rivera* at ¶ 9.

{¶ 13} The state argues that circumstantial evidence establishes that appellant knew or had reasonable cause to believe the Honda was stolen because Warren's testimony indicated that (1) appellant was friends with Warren, having known him for a couple of months, (2) appellant only saw Warren at the Star House or the library, and Warren would walk to either location each time she saw him, (3) appellant had never seen Warren in a car before January 22, 2024, (4) Warren did not own a car, (5) Warren did not have a driver's license, (6) Warren's sudden possession of the Honda in the early morning hours of January 22, 2024, was unexplained and atypical, (7) appellant was in the Honda with Warren for several hours, (8) during the high-speed chase, appellant never asked Warren why he was not pulling over and instead repeatedly stated she did not want to go to jail, and (9) upon crashing the Honda, the other three occupants fled the scene indicating their knowledge the Honda was stolen and making it unlikely that appellant was the only one who did not know the Honda was stolen.[1]

{¶ 14} "[M]ere presence in a stolen vehicle is never sufficient to convict for receiving stolen property. The passenger must have reasonable cause to believe that the vehicle is stolen and either remain for some time in the vehicle after that knowledge or participate or aid in the theft itself." *In re Bromfield*, 2004-Ohio-450, ¶ 12 (1st Dist.).

---

1. During closing arguments at the adjudicatory hearing, the state summarily asserted that its theory of the case was that appellant had committed the offense of receiving stolen property either as an accomplice or pursuant to constructive possession. "One is liable as an accomplice to the crime of another if he gave assistance or encouragement or failed to perform a legal duty to prevent it with the intent thereby to promote or facilitate commission of the crime." *State v. Wickline*, 50 Ohio St.3d 114, 118 (1990). Constructive possession exists when an individual exercises dominion and control over an object, even though that object may not be within his immediate physical possession. *State v. Hankerson*, 70 Ohio St.3d 87, 91 (1982). However, during closing arguments, the state did not explain how appellant had committed the offense under either theory. Moreover, the state did not present any evidence supporting constructive possession or that appellant was an accomplice during the adjudicatory hearing.

{¶ 15} Upon viewing the evidence presented in a light most favorable to the prosecution, we find that the record contains insufficient evidence proving appellant knew or had reasonable cause to believe that the Honda was stolen. There is no evidence that appellant participated in the theft of the Honda. Warren's testimony clearly indicates he was alone when he stole the car. Warren's testimony that he did not tell appellant where he obtained the car clearly indicates he never told appellant that the Honda was stolen. In arguing that appellant knew or had reasonable cause to believe the Honda was stolen, the state relies heavily on the fact that Warren did not own a car, did not have a driver's license, and only had access to his grandmother's car. However, the state did not present any evidence that appellant had knowledge of these facts. The state also relies on the fact that the first time appellant saw Warren drive a car was January 22, 2024, the day of the incident. However, Warren testified that he always walked to the Star House and the library, where he would see appellant, as both locations were within walking distance from his home. The record does not indicate how often appellant saw Warren during their brief acquaintance. The proposition that appellant's first thought in seeing Warren drive a car should have been that the car was stolen is absurd.

{¶ 16} Warren testified that the Honda had no damages when he stole it and that it only suffered damages during the high-speed chase and subsequent crash. The typical indicia of a stolen vehicle were not present during the time appellant was in the car: the steering column was not peeled; there were no broken windows or other damage to the Honda demonstrating a forced entry; and there is no evidence that personal items of the owner were on the seats of the Honda. While Warren testified that the owner had personal items in the trunk of the Honda, the state did not present any evidence that appellant looked inside the trunk or that she was aware there were personal items of the owner in the trunk. Appellant was a 17-year-old mother who wanted to get back to her

child in Columbus and who suddenly found herself in a vehicle travelling at very high speeds trying to evade the state trooper. Appellant's panic and statements during the one-hour high-speed chase that she did not want to go to jail do not indicate she knew the Honda was stolen. Likewise, the flight from the scene of the crash by the other three occupants does not indicate their knowledge that the Honda was stolen. Considering that they had been engaged in a prolonged high-speed chase with a state trooper, appellant's statements and the three occupants' flight, while giving rise to an inference that they knew laws had been violated, it does not give rise to the inference they knew the Honda was stolen. In short, the only evidence presented by the state was that appellant was a passenger in a stolen vehicle.

{¶ 17} As the state failed to present proof that appellant knew or had reasonable cause to believe the Honda was stolen, we find insufficient evidence to support appellant's delinquency adjudication for receiving stolen property. We therefore sustain appellant's first assignment of error. Appellant's delinquency adjudication is reversed and vacated.

{¶ 18} Assignment of Error No. 2:

{¶ 19} THE TRIAL COURT ERRED WHEN IT FOUND APPELLANT A DELINQUENT CHILD BY COMMITTING THE OFFENSE OF RECEIVING STOLEN PROPERTY AS THE WEIGHT OF THE EVIDENCE SHOWED APPELLANT DID NOT KNOW THE CAR WAS STOLEN AND HAD NO REASON TO KNOW THE CAR WAS STOLEN.

{¶ 20} Our disposition of appellant's sufficiency argument renders moot her argument that her delinquency adjudication was against the manifest weight of the evidence. Appellant's second assignment of error is therefore moot and we do not address it. *See* App.R. 12(A)(1)(c); *In re D.B.*, 2024-Ohio-3391, ¶ 40 (1st Dist.).

{¶ 21} Judgment reversed, appellant's delinquency adjudication is vacated, and

appellant is hereby discharged.

HENDRICKSON, P.J., and PIPER, J., concur.